461 So.2d 366 (1984)
STATE of Louisiana in the Interest of the Minor, W.B.
No. 16665-CAJ.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1984.
*367 E. Rudolph McIntyre, Asst. Dist. Atty., Winnsboro, for State.
Joe D. Wray, Monroe, for Juvenile.
Before PRICE, J. Pro Tem., and JASPER E. JONES and FRED W. JONES, Jr., JJ.
JASPER E. JONES, Judge.
W.B. (age 16 at time of offenses charged), was adjudicated a delinquent child in a juvenile proceeding before the Fifth Judicial District Court. The adjudication was based on findings that W.B. was guilty of having committed the following offenses: (1) disturbing the peace in violation of LSA-R.S. 14:103; (2) resisting an officer in violation of LSA-R.S. 14:108; (3) battery of a police officer in violation of LSA-R.S. 14:34.2; and (4) aggravated assault in violation of LSA-R.S. 14:37. In a judgment of disposition the trial court ordered W.B. committed to the custody of the Department of Corrections for a period not to exceed one year or his 21st birthday. W.B. appeals. We affirm in part, reverse in part and remand.
About noon on November 27, 1983, Aaron Wright, the Chief of the Winnsboro City Police, responded to a call about a disturbance at the home of Gloria. When he arrived Gloria told him she had been verbally abused and threatened by M.B., her neighbor across the street. M.B. is W.B.'s mother. Wright told Gloria if she would swear out a warrant he would arrest M.B. but he could do nothing until the warrant was issued. It was Sunday and Gloria told Wright she would obtain the warrant the following day. Wright left her house and drove away. In a few minutes he received a call stating there had been another disturbance at Gloria's home. When he returned Gloria told him she had again been threatened by M.B. Wright repeated his earlier advice that he would need a warrant before he could arrest M.B. Gloria assured him she would get a warrant and he left her house.
When Wright started to depart he saw several people, including W.B. and perhaps M.B., in M.B.'s yard. He stopped his car and told the people not to go back over to Gloria's. W.B. told Wright he had not been over there. An argument ensued and W.B. began extensively cursing Wright. Wright arrested W.B. for disturbing the peace by cursing an officer performing his duty.[1] *368 See R.S. 14:103A(2).[2] When he informed W.B. he was under arrest, W.B. asked him if he wanted to fight. When Wright attempted to handcuff W.B., Wright was struck in the face by W.B. Wright drew his pistol in order to subdue W.B.
When Wright drew his pistol M.B., who had been in her house, came outside. She physically attacked Wright and tried to take the pistol away from him. W.B. joined his mother in the ensuing struggle. During the struggle for possession of the pistol it accidentally discharged striking M.B. in the shoulder. She, nevertheless, continued the struggle and eventually caused Wright to drop the pistol. One of her young daughters picked up the pistol and carried it into the house. Once the pistol was removed the confrontation between Wright, M.B. and W.B. was temporarily discontinued.
In a few minutes the daughter brought Wright's pistol out of the house and M.B. obtained it from her. M.B. then pointed the pistol at Wright and threatened to kill him. At about this point W.B. went into the house and got a shotgun. He brought the shotgun to the door, pointed it at Wright and threatened Wright with it. Wright backed out of the yard, got behind his car and radioed for assistance. Before backup units arrived W.B. carried the shotgun back into the house. When the backup officers arrived they first arrested M.B. and then W.B. W.B. fled when the officers attempted to arrest him. The officers caught him and W.B. struggled with them until he was handcuffed.[3]
On appeal W.B. contends that Wright's initial attempt to arrest him for disturbing the peace was unlawful because of an absence of probable cause. Therefore, all his subsequent actions in resisting the arrest were legally justified.[4]

WAS THE ARREST FOR DISTURBING THE PEACE UNLAWFUL
Cursing directed at a police officer is constitutionally protected speech under the First Amendment to the United States Constitution and under Article 1, § 7 of the Louisiana Constitution which protects the right of freedom of speech unless the words used are "fighting words" which are words that "by their very utterance inflict injury or tend to incite an immediate breech of the peace." City of New Orleans v. Lyons, 342 So.2d 196 (La.1977); White v. Morris, 345 So.2d 461 (La.1977); Norrell v. City of Monroe, 375 So.2d 159 (La.App.2d Cir.1979); State v. Fontenot, 410 So.2d 1112 (La.1982).
The record reflects W.B. called Wright a "G___ D___ white M_____ F_____." Substantially similar words which have been directed at or uttered in the presence of police officers have been recognized by the Louisiana Supreme Court since 1977 to be protected by the freedom of speech provisions of the State and U.S. Constitution. In the case of City of New Orleans v. Lyons, supra, the defendant cursed an arresting officer and called him a "S___" and stated to him "F___ Y___." The court there held these words neither inflicted injury upon the officer nor tended to incite an immediate breech of the peace. The court found that police officers are expected to exercise more restraint than others and that insulting language directed at police officers is less likely to cause an immediate breech of the peace and fall *369 within the "fighting words" exception to protected speech. The Lyons case was cited with approval in White v. Morris, supra, Norrell v. City of Monroe, supra, and State v. Fontenot, supra.
W.B. contends Officer Wright did not have probable cause to arrest him and for this reason Wright's attempt to arrest him was unlawful. Probable cause exists when the facts and circumstances known to the arresting officer, and of which he has reasonably trustworthy information, are sufficient to justify a person of ordinary caution in believing the person to be arrested had committed a crime. Where the facts established do not support probable cause an arrest for disturbing the peace is unlawful. State v. Lindsay, 388 So.2d 781 (La.1980).
Wright testified he had been Chief of Police of Winnsboro for more than twenty years. He stated that during his long career as a police officer he had been subjected to much verbal abuse and that being subjected to this type treatment was part of his job. He admitted that he cursed frequently and he was more calloused to curse words than the average individual.
In the case of Norrell v. City of Monroe the appellant told a Monroe police officer to "get the `God Damned M_____ F_____' light out of my eyes" and when the officer told him to stand up the defendant said to him "F____ Y___." The court held the disrespectful remarks to the police officer did not constitute criminal activity and did not create probable cause to justify an arrest for disturbing the peace. The arrest was found to be unlawful.
The remarks made by W.B. to Chief of Police Wright were not within the "fighting words exception" to constitutionally protected freedom of speech and for this reason did not constitute criminal activity. There was no probable cause for the arrest of W.B. because of these insulting words addressed to the officer. The arrest attempt was unlawful.

RIGHT TO RESIST ARREST
The issue of whether W.B. had a right to resist arrest, and whether he could be found guilty of that offense, is limited to his resistance of the attempted arrest by Wright. Although W.B.'s actions in fleeing from and struggling with the officers who eventually arrested him may have supported a finding of guilty for the offense of resisting an officer, W.B. was not charged for those actions.[5]
A person has a right to resist an unlawful arrest and can use reasonable force in doing so. City of Monroe v. Ducas, 203 La. 974, 14 So.2d 781 (1943); White v. Morris, supra; Norrell v. City of Monroe, supra; State v. Lindsay, supra. W.B. had the right to resist the unlawful arrest for disturbing the peace and the trial court erred in finding that he was guilty of this charge.
Battery is defined as the intentional use of force or violence against a person. LSA-R.S. 14:33.[6] The record does not clearly indicate whether defendant was charged with and found guilty of battering Chief Wright solely for striking him with his fist or also for struggling with him in general. Neither action is the use of unreasonable force. See White v. Morris, supra. The trial court erred in finding defendant guilty of the battery of a police officer.
The aggravated assault charge arose from W.B.'s action in threatening *370 Wright with the shotgun in violation of LSA-R.S. 14:37.[6] Prior to pointing the shotgun at Wright W.B. had left the front yard and was safely in his home. He at this point had no sound reason to fear the unlawful arrest. Instead of staying in the house, he secured a shotgun, returned to the front door and pointed the gun at Wright and threatened him with it.[7] This action constitutes the use of unreasonable force which was unnecessary in the resistance of the unlawful arrest. At the time W.B. threatened Wright with the shotgun, Wright had been disarmed and the mother had the pistol pointed at him. There was no need for W.B. to point a second gun at him. While police officers may not always act in strict accordance with the law, they are, nevertheless, the guardians of our society and must be protected from the unnecessary use of force. There is no error in the trial court's finding that W.B. was guilty of aggravated assault.
The finding that W.B. was guilty of aggravated assault supports the trial court's adjudication of delinquency. However, since defendant was not guilty of the other three charged offenses, the judgment of disposition committing him to the Department of Corrections for one year must be reversed as being contrary to law. Article 89B(1) of the Code of Juvenile Procedure provides that the judgment of disposition shall not remain in force for a period exceeding the maximum term of imprisonment for the offense forming the basis for the adjudication. The maximum term of imprisonment for aggravated assault is six months.
The adjudication is AFFIRMED. The disposition is REVERSED and the case is remanded for disposition in accordance with law.
NOTES
[1] The charge as set forth in the petition to have the minor adjudicated a delinquent was:

CHARGE ONE: he did violate the provisions of L.R.S. 14:103, relative to disturbing the peace on November 27, 1983, in that he did call Officer A.W. Wright by an offensive or derisive name or make a noise or exclamation in his presence and hearing with the intent to deride, offend or annoy him.
[2] R.S. 14:103A(2). Disturbing the peace

A. Disturbing the peace is the doing of any of the following in such manner as would foreseeably disturb or alarm the public: ...
(2) Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place, or call him by any offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty ...
[3] The testimony of numerous defense witnesses reflects facts substantially in conflict with the facts which we have related which represent Wright's version of what occurred. The trial judge did not favor us with a finding of fact but he necessarily accepted Wright's testimony to find W.B. guilty of the four offenses charged.
[4] W.B. makes no contention that LSA-R.S. 14:103A(2) is unconstitutional.
[5] In describing the resisting arrest charge the state's petition specifies:

CHARGE TWO: he [defendant] did violate the provisions of L.R.S. 14:108 relative to resisting an officer, on November 27, 1983, in that he did intentionally oppose, resist and obstruct one Officer A.W. Wright in that he did attempt to avoid arrest after notice was given to him that he was under arrest and knowing and having reason to believe and know that the said officer was acting in his official capacity; ...
[6] LSA-R.S. 14:33. Battery defined

Battery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another.
[6] LSA-R.S. 14:37. Aggravated assault

Aggravated assault is an assault committed with a dangerous weapon.
Whoever commits an aggravated assault shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both.
[7] All of the defense witnesses testified either that they did not see defendant get the gun or that he did not get it. Wright's testimony that W.B. threatened him with a gun is supported by the testimony of two other witnesses. Gloria viewed part of the incident from across the street and saw W.B. pointing a shotgun at Wright. Lucius Myles, a passerby, testified that he saw W.B. with something in his hand. Myles thought at the time it might have been a stick. After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded that the state proved beyond a reasonable doubt that defendant threatened Wright with a shotgun. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).