511 So.2d 1200 (1987)
CITY OF WEST MONROE, Appellee,
v.
Paul D. COX and Bill E. Cox, Appellants.
No. 18697-KA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1987.
Minard & Mixon by Cameron C. Minard, Columbia, for appellants.
Blackwell, Chambliss, Hobbs and Henry by Larry Arbour, West Monroe, for appellee.
Before MARVIN, SEXTON and LINDSAY, JJ.
MARVIN, Judge.
After being convicted of misdemeanors which were separately charged under city ordinances and then consolidated for trial in the City Court of West Monroe, and having had those convictions affirmed on appeal to the Ouachita Parish District Court, defendants attempt an appeal of their convictions to this court. Noticing our lack of appellate jurisdiction, we exercise our supervisory jurisdiction and reverse the convictions.
The record defendants have caused to be lodged here does not establish that defendants were entitled to a trial by jury, the jurisdictional basis of an appeal to this court. CCrP Art. 912.1 B.
The record contains a copy of two city ordinances, Code Section 11-4014 (Disturbing the Peace which carries a penalty of either or both a $100 fine and 90 days jail) and Ord. no. 1634, amending Art. 70 of Ord. No. 1357 (Resisting an Officer). The language of these ordinances is similar to language of the state statutes and will not be quoted here. See LSA-R.S. 14:103 A(2), 108. Both defendants were found guilty of violating Code of Ordinances Section 11-4015, a resisting an officer crime. Code Section 11-4015 is not in the record and the Ord. no. 1634, which is in the record, does not state the penalty for the crime which it *1201 defines. An appellant is required to set forth the jurisdictional basis for the appeal. URCA 2-12.4.
For the resisting crime, Paul Cox was ordered to pay a fine of $300 or serve 60 days in jail and Bill Cox was ordered to pay a fine of $250 or serve 50 days in jail. Paul Cox was found guilty of disturbing the peace and was ordered to pay a fine of $50 or serve 10 days in jail.
Paul Cox was found not guilty of violating ordinance no. 11-2006 (Simple Assault). Bill Cox was found not guilty of violating ordinance no. 11-2003 (Simple Battery). Those code sections or ordinances are not in the record and the penalty each authorizes is not otherwise shown.
We notice our lack of jurisdiction of the appeal of each defendant and the fact that defendants initially appealed to the apparently correct forum, the Ouachita Parish District Court. LSA-R.S. 13:1896 (B); CCrP Art. 912.1 B. See also CCrP Art. 493.1; State v. Odell, 458 So.2d 1304 (La. 1984); State v. Eppinette, 478 So.2d 679 (La.App. 2d Cir.1985); City of Bossier City v. Jacobs, 438 So.2d 639 (La.App. 2d Cir. 1983).
LSA-Const. Art. 5, § 10, however, affords us supervisory jurisdiction. Accordingly, we shall treat the appeals as applications for writs of review, which we grant to reverse the convictions.

FACTS
West Monroe Police Officer Perkins testified that he had written one or more offense tickets arising out of a traffic violation by Paul D. Cox about 9:00 p.m. before the incident occurred the next morning that resulted in the charges which are the subject of this appeal.
About 2:30 a.m. the next morning, Perkins was alone in the radio room of the police station working in relief of the radio operator when Paul Cox and his brother, Bill, entered the public lobby of the station and walked up to the counter. Perkins left the adjacent radio room and walked to the opposite or private side of the counter to answer their inquiries. The counter is 25 feet from the front door of the station. Perkins related his version of the incident:
[Paul Cox] said he wanted my name and I told him it was on ... my report, which he could get a copy of. And, he said he... didn't want to wait for the report, he wanted my name, so I gave it to him.
What was his response ...?
I think he asked me how to spell [my name] ... And then he said ..."I'm going to have you up on charges bubba"
... I said I didn't care.
And what did he say?
[He said] "Shove it up your goddamn ass," and [he] turned around and walked out.
... [His words] annoyed me.
What did you then do?
Had to go outside the police station to, to try, he was walking out and I went outside the police station to stop him and arrest him ... for loud and profane language... disturbing the peace.... Well, he was already, there's two doors out, there an inner door and an outer door. He was at the outer door just outside of it. As I came through, I told him, hold it, he was under arrest.... [f]or cussing, That's what I said, for cussing. I didn't say loud and profane language, I said cussing.
I tried to [place him under arrest]....
I grabbed his arm and spun him around [trying to handcuff him] ...
Bill Cox [then came up behind me and] put his arms around me in kind of ... a bear hug and pulled me off of [Paul Cox] I shook him off and tried to grab Paul Cox again.
... [Paul Cox] did like this (swinging his fist or hand) and hit his chest and said "if you weren't in uniform, I'd whip your ass...
I pushed Bill Cox away from me and said, get off of me. And I kept trying to arrest Paul....
[Paul] was pushing on me, and Bill was pushing on me and I tried to push them both off and get my hands on one of them. At least get one of them between me and the other one. I had called for some backup, but I didn't have my radio *1202 turned on ... I had to reach back down and turn it back on. So I was trying to keep them off, pretty much keep them off of me while trying to get one of them....
When I put my hands on one of them, the other one would put his hand on my chest or my shoulder and just kind of push me back. And then they'd get in between me, where, you know, knock my hands loose from whichever one I was trying to arrest....
I finally ... arrested and handcuffed Paul Cox....
One of the [backup] officers arrested Bill Cox....
... Paul Cox made a statement [about this time] "here comes some more [backup officers], better stop," or something like that.
On cross-examination Officer Perkins acknowledged that while in the police station he did not feel threatened, provoked, or in fear. Officer Perkins said, "I never felt threatened by him," even when Paul Cox cussed him and turned and walked out the station door. He explained that the "action" of Paul Cox in cursing him "required" him to go from the public counter across the lobby (25 feet) and out the front door of the station to arrest Paul Cox for cursing him. Perkins acknowledged that neither defendant attempted to interfere with his radioing for backup help.
Police Sergeant Bobby Avery, testifying on rebuttal, said he was one of the officers who answered Perkins' backup call. He escorted Paul Cox to jail at Perkins' request. Sergeant Avery said Officer Perkins was "mad and ... was hollering at Mr. Cox, ... upset," and that he told Perkins "just to calm down, that that was enough."
The trial court found that Paul Cox told Perkins he was going to file charges against him, that Perkins responded, "I don't give a s____," and became "pretty well upset," that Paul Cox then made a signal to Perkins with his middle finger, telling him to "shove it up his a____." The court considered that the words of Paul Cox were "offensive and fighting words," which gave Perkins the "right to react." "As far as his having reacted and gone out and stopped Mr. Cox on the way out of the building, ... that was for an offense committed in his presence ... and... he was in his right to make that arrest." The court reasoned that although the word "arrest" was not used, the arrest occurred "when Mr. Perkins laid his hands on him [and] ... attempted to take him into custody ... on this charge of disturbing the peace." The court then found Paul Cox and Bill Cox guilty of resisting arrest.... from the evidence I have heard, there [was] no drawing back and slugging or something like that, but rather ... the physical intervention [of Bill Cox] by taking hold of the officer in furtherance of the resisting ...

FIGHTING WORDS; ARREST AND RESISTANCE
As in Norrell v. City of Monroe, 375 So.2d 159 (La.App. 2d Cir.1979), the basis for the arrest of Paul Cox for disturbing the peace was the "disrespectful remarks to the police officer." There Norrell told the police officer, who might have had sufficient reasonable suspicion under CCrP Art. 215.1 to demand an explanation of what Norrell was doing sitting near the ditch in a residential area before daylight, to "get the g____d____m____f____ [light] out of my eyes." We noted that the cursing of a police officer by a citizen does not "justify" an arrest for disturbing the peace, for resisting an officer, or for criminal mischief.
[Norrell's words and] actions may have justifiably angered the officer as an affront to his authority, [but this] did not constitute criminal activity. Consequently, [Norrell's] arrest was unlawful and the officer's use of physical violence to overcome [Norrell's] resistance [of the arrest "constituted a battery."] 375 So.2d 161.
Words spoken to a police officer such as "you g____d____m____f____ I am going to [the Superintendent of Police] about this," and "You s____ of a b____, I'll choke you to death," without *1203 threatening conduct, have been held within the realm of protected free speech, even though the words are shocking to the sensibilities of others. A trained police officer is held to a "higher degree of restraint that the average citizen" to avoid physical retaliation even to words that might be categorized as "fighting words." See cases cited and discussed in Malone v. Fields, 335 So.2d 538, 541-542 (La. App. 2d Cir.1976), in City of New Orleans v. Lyons, 342 So.2d 196 (La.1977), and in State in the Interest of W.B., 461 So.2d 366 (La.App. 2d Cir. 1984).
Fighting words are those "face-to-face" words which tend to incite an immediate breach of the peace. Chaplinsky v. New Hampshire, 315 U.S. 568, 573, 62 S.Ct. 766, 770, 86 L.Ed. 1031 (1942); Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 1107, 31 L.Ed.2d 408 (1972).
Like the words of W.B., supra, (calling the police chief a "G____D____white M____F____) the words of Paul Cox, gesturing and telling Officer Perkins to "shove it ..." were not face-to-face fighting words and are simply "not within the `fighting words exception' to constitutionally protected ... speech and for this reason did not constitute criminal activity." 461 So.2d at 369.
It is appropriate at this juncture for us to agree with the observations made by the late Justice Albert Tate, dissenting in City of New Orleans v. Lewis, 263 La. 809, 269 So.2d 450 (1972), reversed at 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974):
Whatever our personal views are as to what sort of language should or should not be punishable, this court is bound by our state and federal constitutions to enforce constitutional protection of individuals and their speech as interpreted by authoritative decisions of the nation's high court.
The police, our front line soldiers in the battle against crime, deserve the respect and support of our officials and citizens. Nevertheless, ever since this nation fought for and obtained its freedom, it has not been a crime to curse or use opprobrious language about the public officers of our democratic republic. If, for instance, the present ordinance had made it a crime wantonly to curse or revile members of the United States Supreme Court or the state judiciary (or the Governor, or the legislators or any other public officer or servant), as well as the police, I am certain that not one of the majority would deem such an enactment constitutional.
The right to criticize our public officers, be they judges or policemen, has, since our earliest days, been deemed a basic right of all Americans. The harshness or unfairness of language used in such critical commentary does not remove it from the protection of our constitution. Freedom of speech is protected not only for our newspapers and politicians, but also for our citizens on back streets of slum areas. (269 So.2d 459)
A citizen may use reasonable force to resist an unlawful arrest. City of Monroe v. Ducas, 203 La. 971,14 So.2d 781 (1943) and authorities cited supra. This record suggests that Bill Cox believed that his brother, Paul Cox, because of injuries earlier sustained in an automobile accident, was particularly vulnerable to head and facial injuries and that it was necessary to protect him from possible injury. This record does not indicate or in any way support a finding that either Paul Cox or Bill Cox used unreasonable force in resisting the unlawful arrest.
We reverse the conviction or convictions of each defendant and order them discharged. We need not and do not consider the remainder of the errors that are alleged by the defendants.
Defendants' appeals are treated as applications for supervisory review. We grant the applications and reverse the convictions.