546 So.2d 240 (1989)
STATE of Louisiana, Appellee,
v.
Lorenza McCOY, Appellant.
Nos. 20557-KA, 20558-KA.
Court of Appeal of Louisiana, Second Circuit.
June 14, 1989.
*241 Larry Jefferson, Monroe, for appellant.
Charles L. Cook, Asst. Dist. Atty., Monroe, for appellee.
Before HALL, C.J., and FRED W. JONES, Jr. and NORRIS, JJ.
NORRIS, Judge.
On July 13, 1988 Lorenza McCoy was charged by separate bills of information with disturbing the peace, LSA-R.S. 14:103 A(2) and (3), and resisting an officer, LSA-R.S. 14:108. On August 16, 1988 the charges were consolidated for trial, and defendant waived his right to a jury trial. He was found guilty of disturbing the peace and resisting an officer and fined $50 and $100, respectively. He appeals his convictions to this court, and we reverse.
On June 14, 1988 defendant called the Ouachita Parish Sheriff's Office and reported that his daughter had run away. Corporal Sandy Pfeiffer responded to the call at approximately 4:00 a.m. Defendant, his wife Frances McCoy and Corporal Pfeiffer were in the McCoys' house filling out the officer's report. When defendant asked Mrs. McCoy to provide some information she refused, and he slapped her. The corporal did not arrest defendant for this offense. He separated the two, taking Mrs. McCoy outside and telling defendant to remain in the house. Corporal Pfeiffer also called for backup.
When the other officers arrived, defendant came out of the house. Corporal Pfeiffer testified that defendant yelled, screamed and "began to use profanity and vulgarity in a loud manner," including the phrase m____ f____. Deputy Dennis Rogers, one of the officers sent out as a backup, testified that defendant used "vulgarities," and specifically m____ f____. Corporal Pfeiffer said that the profanity was addressed to Mrs. McCoy and at the entire situation. Deputy Rogers testified that defendant's profane language was directed at the situation as a whole, not anyone in particular. Mrs. McCoy testified at trial that defendant used the word "damn" when addressing her.
During this time there were five other people present, including the McCoys' son *242 and a friend. Everyone was in defendant's front yard, near the sheriff's car parked on the curb.
After defendant's profane outburst, the deputies placed him under arrest. They ordered him to place his hands on the police car, and he refused. When a deputy attempted to put handcuffs on defendant he "stiffened" and, according to the deputies, resisted. Defendant was charged with and convicted of disturbing the peace and resisting an officer.
Defendant appeals from his convictions with two assignments of error: 1) the trial judge erred in failing to grant defendant a judgment of acquittal after the close of the state's case; and 2) the court erred in finding defendant guilty when there was insufficient evidence.
Both these assignments of error urge the same issue, insufficient evidence, and we will treat them as one.
The proper standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

DISTURBING THE PEACE
Defendant was originally charged with disturbing the peace in violation of LSA-R.S. 14:103 A(2) and (3), which provide:
§ 103. Disturbing the peace
A. Disturbing the peace is the doing of any of the following in such manner as would foreseeably disturb or alarm the public:
* * * * * *
(2) Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; or call him by any offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty; or
(3) Appearing in an intoxicated condition * * *.
As the trial judge noted, there was no evidence presented to satisfy the requirement of subsection A(3) of the statute, intoxication. There was also no evidence to satisfy that portion of subsection A(2) that requires specific intent to deride, offend or annoy the other person. See State v. DeShazo, 504 So.2d 963 (La.App. 1st Cir. 1987). The trial court found no such specific intent and our review of the trial shows no effort was made to adduce such evidence.
McCoy was therefore convicted of violating the first portion of subsection A(2), which proscribes simply addressing any offensive, derisive or annoying words to any other person who is lawfully in any street or other public place in such a manner as would foreseeably disturb or alarm the public. On appeal McCoy argues that the persons allegedly addressed were not in a public place and that his language was constitutionally protected speech.
LSA-R.S. 14:103 A(2) specifically limits itself to words addressed to "any other person who is lawfully in any street, or other public place [.]". Black's dictionary defines public place as
a place to which the general public has a right to resort, not necessarily a place devoted solely to the uses of the public, but a place which is in point of fact public rather than private, a place visited by many persons and usually accessible to the neighboring public (e.g. a park or public beach).
At trial both sheriff's deputies testified that while defendant was using obscenities everyone was in the front yard. Mrs. McCoy, however, testified she was standing on the sidewalk in the front yard when the defendant said "damn."
We have no hesitation in holding that McCoy's front yard is not a public place, as specified in R.S. 14:103 A(2). The sidewalk, on which Mrs. McCoy was standing, presents a more difficult question. Deputy Rogers testified that it was "a sidewalk coming out to the street." The trial *243 judge admitted that he didn't know whether the sidewalk was parallel or perpendicular to the street curb.
Generally, streets, sidewalks and parks are considered to be public places. United States v. Grace, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983). However, sidewalks which run from the street to the private residences located along the street cannot be termed "public sidewalks" since as they are not for the use of the general public, but rather for the individual use of persons visiting the residences to which each sidewalk leads. Arvel v. City of Baton Rouge, 234 So.2d 458 (La.App. 1st Cir. 1970). As the trial judge said, the evidence did not establish which way the sidewalk ran, and we cannot determine whether Mrs. McCoy was standing in a public place.
Thus, we must find the state did not bear its burden of proving beyond a reasonable doubt every essential element of the crime under § 103 A(2). Defendant's conviction must be reversed on this ground alone.
Further, the state failed to prove beyond a reasonable doubt that any language used in violation of the statute was not constitutionally protected speech.
At trial the officers testified that defendant used "profanity and vulgarity." The only phrases they reported to the trial court were m____ f____ and "damn." In determining whether any of this profanity is not constitutionally protected speech, and therefore prohibited under LSA-R.S. 14:103 A(2), we can consider only these two phrases. The deputies' general descriptions of "profanity" are not sufficient to support a conviction. See State v. Woolverton, 474 So.2d 1003 (La.App. 5th Cir. 1985).
Further, as appellant argues in brief, LSA-R.S. 14:103 A(2) only prohibits words addressed "to any other person." Both officers testified that defendant's profane language was addressed to the situation as a whole, though Officer Pfeiffer did say that some of defendant's profane language was addressed to Mrs. McCoy. Since Mrs. McCoy testified that the only obscenity she even heard was "damn", we could find that this word was addressed to her; however, the state failed to prove that the phrase m____ f____ was addressed to anyone.[1] By its own terms the statute is inapplicable to language which was not addressed to anyone.
The first and fourteenth amendments to the U.S. Constitution require great care in the regulation of speech. Only "fighting wordsthose which by their very utterance inflict injury and tend to incite an immediate breach of the peace" are punishable. Words not considered "fighting words" are constitutionally protected expressions. City of New Orleans v. Lyons, 342 So.2d 196 (La.1977); White v. Morris, 345 So.2d 461 (La.1977); State v. Woolverton, supra; Malone v. Fields, 335 So.2d 538 (La.App. 2d Cir.1976).
We cannot conclude under these circumstances that the word "damn," by its very utterance, inflicted injury and tended to incite an immediate breach of the peace.
Viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could find that the state bore its burden of proving beyond a reasonable doubt every essential element of the charged offense, disturbing the peace, LSA-R.S. 14:103 A(2). Defendant's conviction on this count must be reversed.

RESISTING ARREST
Defendant argues that because his arrest for disturbing the peace was unfounded, *244 the conviction for resisting arrest[2] should also be reversed.
As we have seen, McCoy's use of foul language did not constitute criminal conduct in this instance, nor would a person of ordinary caution be justified in believing defendant had committed a crime. The police officers, who were present during the incident, did not have probable cause to arrest the defendant. Where the facts established do not support probable cause an arrest for disturbing the peace is unlawful. State In Interest of W.B., 461 So.2d 366 (La.App.2d Cir.1984). A person has a right to resist an unlawful arrest and can use reasonable force in doing so. State v. Lindsay, 388 So.2d 781 (La.1980); State In Interest of W.B., supra. Defendant's acts of refusing to place his hands on the police car and "stiffening" when they attempted to handcuff him constituted reasonable resistance of an unlawful arrest. The defendant's conviction on this charge was erroneous and must be reversed.
Lorenza McCoy's convictions on the charges of disturbing the peace and resisting an officer, M68529 and M68528, are reversed and the sentences vacated. The defendant is ordered discharged.
REVERSED.
HALL, C.J., concurs with written reasons.
HALL, Chief Judge, concurring.
I concur in the result and the discussions of each issue. The only purpose of this concurrence is to express my view that specific intent to deride, offend or annoy the other person, or to prevent him from pursuing his lawful, business, occupation, or duty applies to the first part of Section 103 A(2) as well as the last part. In spite of the semi-colon, the description of the victim in the part following the semi-colon as "him" requires reference back to the first part which describes the victim as "any other person who is lawfully in any street, or other public place." Likewise, the intent language in the last part refers back to the first part. The section is awkwardly drafted and must be read as if the semi-colon were a comma to make any sense.
NOTES
[1] Even if we were to conclude that the phrase m____ f____ was addressed to the deputies, it would fall inside the category of constitutionally protected speech. A trained police officer is held to a "higher degree of restraint than the average citizen" to avoid physical retaliation even to words that might be characterized as "fighting words." City of West Monroe v. Cox, 511 So.2d 1200 (La.App.2d Cir.1987).

In City of West Monroe v. Cox, supra, this court held that the words "you G____ D____ white M____ F____," spoken to a police officer, were within the realm of protected free speech. A fortiori, the milder phrase m____ f____, if addressed to the deputies in the instant case, must fall into the realm of constitutionally protected free speech.
[2] § 108. Resisting an officer

A. Resisting an officer is the intentional opposition or resistance to or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity.
B. (1) The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification, and connotation mean the following:
(a) Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.
(b) Any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before his is incarcerated in jail.
(c) Refusal by the arrested party to give his name and make his identity known to the arresting officer.
(d) Congregation with others on a public street and refusal to move on when ordered by the officer.
(2) The word "officer" as used herein shall include deputy sheriffs and municipal police officers.