h WALTZER, Judge.

STATEMENT OF THE FACTS

The defendant was charged with one count of possession of cocaine, a violation of LSA-R.S. 40:967(0(2). A motion to suppress the evidence was heard and granted on 11 August 1997. The prosecution invokes our supervisory jurisdiction.

*126
FACTS

On 8 April 1997, the defendant Samuel Miller was seen entering the restroom at the Amtrak station. He was followed into the restroom by an Amtrak officer. Once the officer was inside the restroom he saw the defendant and other men. The officer questioned the men to see if they had any business in the station, and he warned all of the men to leave the area. With the exception of the defendant, all those present complied. The defendant loudly stated: “This is a public building, and I’ll do whatever I want.” The officer stated to the defendant that he was causing a disturbance and he had to leave. The defendant used a “profanity” and refused to leave and called the officer an unspecified name. The officer proceeded to arrest the defendant for trespassing and disturbing the peace. When the officer took the defendant to the Amtrak office and searched him, he found a glass crack pipe containing cocaine.-

DISCUSSION

|2The glass pipe containing the cocaine was found pursuant to a search incident to the defendant’s arrest. See State v. Wilson, 467 So.2d 503 (La.1985), cert. denied Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985); State v. Johnson, 94-1170 (La.App. 4 Cir. 8/23/95), 660 So.2d 942 writ denied, State v. Johnson, 95-2331 (La.2/2/96), 666 So.2d 1092, and State v. Dibartolo, 95-3044 (La.2/2/96), 666 So.2d 1105. Therefore, in order for the seizure to be lawful, the prosecution needed to show that the defendant’s arrest was legal. The prosecution argues the officer was justified in arresting the defendant because he was trespassing on Amtrak property and because he used profanity in response to the officer’s order for him to leave. The prosecution admits that the defendant could have been arrested for criminal trespass and disturbing the peace, and concedes that these offenses are either misdemeanors or violations of the municipal code, warranting no more than a summons. The prosecution insists, however, that an arrest was warranted because the officer was convinced somehow that the defendant would not honor the summons and fail to appear.

A. Criminal Trespass

With respect to its first argument, the prosecution contends that the officer had probable cause to arrest the defendant for criminal trespass, a violation of Section 54-153 of the Code of the City of New Orleans.[1] The provisions of this ordinance are identical to the provisions of LSA-R.S. 14:63, regarding the crime of criminal trespass. The prosecution asserts that the defendant’s actions show that he knew his entry was not authorized. However, |3the evidence adduced by the prosecution does not show that the defendant knew or reasonably should have known his entry was unauthorized. The area the defendant entered in the Amtrak station admittedly was a public area. According to the officer’s testimony the facility was for the use of train passengers as well as bus passengers, and for patrons of the restaurant located in the building. The facility who was not marked in such a way as to alert any member of the public as to who was excluded from its use. The officer did not testify that the use of the facility was limited in any way; the officer did not testify that the defendant was engaging in any suspicious activity or loitering in the building. All the defendant did was to enter the men’s room, where apparently other men were congregated. The defendant’s refusal to answer the officer’s questions concerning his presence, his insistence that the building was a public area, his assertion that he was going to get some water, belie the assertions of the prosecution that he knew his presence was unauthorized. The defendant’s statements to the officer, albeit not friendly and submissive, show that the defendant was annoyed by being asked questions in a public place where he considered he had a right to be.
The eases cited by the prosecution are inapposite. State v. Stevens, 497 So.2d 12 (La.App. 4 Cir.1986) dealt with a defendant *127 who was arrested for using a restroom designated for the exclusive use of tenants of an apartment building where the defendant had formerly lived. State v. Johnson, 381 So.2d 498 (La.1980), cited by the prosecution is likewise not controlling, because there LSA-R.S. 14:63.3, entitled: “Entry or remaining in places or on land after being forbidden” is being interpreted rather than the criminal trespass statute. More significantly, the whole thrust of Johnson was that the defendant’s ^conviction was reversed because although the defendant had at some undetermined time in the past been warned not to enter the bus station, no one warned him to leave on the date of his arrest; but rather, he was allowed to remain in the station for over an hour and was only arrested after he left.
An argument could be made that the defendant’s refusal to leave after being asked to do so was a violation of LSA-R.S. 14:63.3.[2] It is this statute to which the Court was referring in Johnson. Thus, the question in the case at bar becomes whether the officer was authorized to request that the defendant leave. Although the officer testified he was employed by Amtrak and that the restroom was used by Amtrak passengers, he also admitted that the building contained the bus terminal and a restaurant. As such, it is not clear whether the officer was possessed of any authority to bar anyone from using the admittedly public facilities just because that person was not a patron of Amtrak. There was no evidence presented as to who owned the building, nor was any evidence presented that the officer was authorized by the other businesses in the building to eject people who did not patronize them. Without such evidence, the prosecution failed to show that the officer was an “authorized person” who could forbid the defendant to remain, at least in the absence of any unlawful conduct on the defendant’s part.
The evidence adduced at the hearing indicates the defendant did not commit any “suspicious” act prior to the officer’s approach and questioning. He Rmerely entered the restroom, where other men were congregating. The defendant was not obliged to answer the questions posed to him, because he had not given the officer reasonable suspicion to suspect the defendant was engaged in criminal activity. See, State v. Sneed, 95-2326, p.3 (La.App. 4 Cir. 9/11/96), 680 So.2d 1237, 1238; writ denied 96-2450 (La.3/7/97), 689 So.2d 1371, where this Court described the standard to support an investigatory stop:
An individual may be stopped and questioned by police if the officer has a reasonable suspicion that the person “is committing, has committed, or is about to commit an offense.” La.Code Crirn. Proc. Ann. art. 215.1. While “reasonable suspicion” is something less than the probable cause needed for an arrest, it must be based upon particular articulable facts and circumstances known to the officer at the time the individual is approached. State v. Smith, 94-1502, p. 4 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082. The officer’s past experience, training and common sense may be considered in determining if the inferences drawn from the facts presented were reasonable. State v. Jackson, 26,138 (La.App. 2 Cir. 8/17/94), 641 So.2d 1081, 1084.
See also State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713; State v. Williams, 95-1971 (La.App. 4 Cir. 11/16/95), 665 So.2d 112.
Here, the officer ordered the defendant to leave only after the defendant refused to answer any questions concerning his presence. Therefore, the officer was not authorized to ask him to leave absent any unlawful actions on his part. Thus, the officer did not have probable cause to arrest him for trespassing, and it is doubtful he had probable cause to arrest him for remaining in the restroom. Without probable cause, the sub *128 sequent search incident to this arrest was invalid.

B. DISTURBING THE PEACE

| f;The prosecution argues the officer had reasonable suspicion to arrest the defendant for disturbing the peace because the defendant belligerently refused to answer the officer’s questions, refused to leave, and cursed him. The prosecution refers to Section 54-403 of the Code of the City of New Orleans.[3]
The State contends the defendant’s statements to the officer after being asked his business in the restroom constituted disturbing the peace. The statements which the defendant made, according to the officer’s testimony, were his response: “This is a public building, and I’ll do whatever I want”; his response to being asked to leave by using some unspecified “profane language” and calling the officer an unspecified name; and his further response: “I’m not leaving, I’m going to get me some water.” Although there are no cases interpreting this ordinance, there are cases which interpret the analogous state statute, LSA-R.S. 14:103.[4]
The prosecution cites an earlier case which found that the defendant’s statement to officers that they were “f — ing pigs”, along with her screaming, was sufficient to find her guilty of disturbing the peace. State v. Barge, 444 So.2d 735 (La.App. 5 Cir.1984), unit denied, 446 So.2d 1229 (1984). Although our Court has not addressed this issue, later cases from our sister circuits have found that a higher standard exists of what is necessary to constitute disturbing |7the peace when the person to whom the comments are addressed is an officer. In State v. McCoy, 546 So.2d 240 (La.App. 2 Cir.1989), the deputies testified the defendant used obscenity, including the word “damn” and the phrase “m-” “f-”, when being questioned concerning hitting his wife. The Court first found that the general description of “profanity” was not sufficient to support the conviction for disturbing the peace. The Court then considered the only two “profane” terms to which the officer specifically testified and found that because they were not actually addressed to the officers, but rather more to the situation at hand, they could not constitute disturbing the peace. The Court also found that even if these words had been directly addressed to the deputies, they still would not have constituted disturbing the peace because they would fall within the category of protected speech. The Court stated:
The first and fourteenth amendments of the U.S. Constitution require great care in the regulation of speech. Only “fighting words — those which by their very utterances inflict injury and to incite an immediate breach of the peace” are punishable. Words not considered “fighting words” are constitutionally protected expressions. City of New Orleans v. Lyons, 342 So.2d 196 (La.1977); State v. Woolverton, [474 So.2d 1003 (La.App.5th Cir., 1985)]; Malone v. Fields, 335 So.2d 538, 538 (La App.2d Cir.1976).
McCoy, 546 So.2d at 243.
The Court further addressed the standard to be used when the recipient of the remarks is an officer:
Even if we were to conclude that the phrase m-f-was addressed to the deputies, it would fall inside the category of constitutionally protected speech. A trained police officer is held to a higher degree of restraint than the average citizen “to avoid physical retaliation” even *129 toward that might be characterized as “fighting words.”C% of West Monroe v. Cox, 511 So.2d 1200 (La.App. 2d Cir.1987). In City of West Monroe v. Cox, supra, this court held that the word “you G—D-white M-F-,” spoken to a | «police officer were within the realm of protected free speech. A fortiori the milder phrase m-f-, if addressed to the deputies, in the' instant case, must fall into the realm of constitutionally protected speech.
McCoy, 546 So.2d at 243, fn. 1. In City of West Monroe v. Cox, cited in the passage above, the court defined “fighting words” as “those ‘face to face’ words which tend to incite an immediate breach of peace. Chaplinsky v. New Hampshire, 815 U.S. 568, 573, 62 S.Ct. 766, 770, 86 L.Ed. 1031 (1942); Gooding v. Wilson, 405 U.S. 518 [524-25], 92 [S.] Ct. 1103, 1107, 31 L.Ed.2d 408 (1972).” Cox, 511 So.2d at 1203. The Court found the defendant’s instruction to the officer to “shove it” did not comprise “face-to-face fighting words” and, thus, were constitutionally protected. Likewise, in State in the Interest of W.B., 461 So.2d 366 (La.App. 2d Cir. 1984) the Court held the defendant addressing the officer as a “g—” “d-” white “m-” “f ’ was in fact constitutionally protected speech and did not provide probable cause for the defendant’s arrest for disturbing the peace. In State v. Woolverton, 474 So.2d 1003 (La.App. 5 Cir.1985), the officer’s testimony concerning unspecified “cursing” and his use of “a little profanity” did not show the officers had probable cause to arrest him for disturbing the peace. City of New Orleans v. Lyons, 342 So.2d 196 (La.1977), and Lewis v. City of New Orleans, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974).
As noted above, here the officer did not testify to what “profane language” the defendant used when refusing to state his business in the restroom. Moreover, there is no testimony in the record to show that the defendant’s word would reasonably have caused the officer to fear for his safety, the safety of others, or for any property. Although the officer testified that the defendant spoke loudly, that does not constitute disturbing the peace, | ¡¡neither does his refusal to tell the officer why he was in the restroom. Neither LSA-R.S. 14:103 nor Section 54-403 of the Code of the City of New Orleans were violated. Therefore, the officer did not have probable cause to arrest the defendant for disturbing the peace, and the subsequent search incident to his arrest was not lawful.
The prosecution lastly argues that the officer was justified in arresting the defendant for these misdemeanors, rather than issuing a summons. The prosecution further argues that a summons was not issued because the officer “reasonably believed that the defendant would not appear upon a written summons.”
The prosecution’s argument is not supported by the record; the officer did not testify that he could have issued a summons rather than arresting the defendant. Because we agree with the trial court that the officer did not have probable cause to arrest the defendant, it is immaterial whether he would have arrested him with or without a summon.

CONCLUSION

The officer arrested the defendant based on the fact that the defendant refused to tell him why he had entered the restroom and refused to leave the restroom when ordered to do so, in the absence of an suspicious conduct by the defendant prior to being so questioned. The defendant stated that he had come to the restroom to “get me some water”. The trial judge was correct when he found that there was'not probable cause to arrest the defendant for trespassing (under either the state law or the municipal ordinance), or for remaining in the restroom after being told, to leave (under state law), or for disturbing the peace | io(under either state law or the municipal ordinance). Because the arrest for these offenses was illegal, the search incident to the arrest was likewise unlawful.

APPLICATION FOR SUPERVISORY WRITS GRANTED; RELIEF IS DENIED; THE RULING OF THE TRIAL COURT ON THE MOTION TO SUPPRESS IS AFFIRMED.

. This section provides as follows: (a) No person shall without authorization intentionally enter any structure, watercraft, or movable, (b) No person shall intentionally enter immovable property owned by another; (1) When he knows his entry is unauthorized, or (2) Under circumstances where he reasonably should know his entry is unauthorized.

. LSA-R.S. 14:63.3 provides in pertinent part: A. No person shall without authority go into or upon or remain in or upon or attempt to go intp or upon or remain in or upon any structure, watercraft, or any other movable, or immovable properly, which belongs to another, including public buildings and structures, ferries, and bridges, or any part, portion, or area thereof, after having been forbidden to do so, either orally or in writing, including by means of any sign hereinafter described, by any owner, lessee, or custodian of the property or by any other authorized person.

. The applicable portions provide: (b) Disturbing the peace is the intentional performance of any of the following acts; * * * (6) To act in a violent or tumultuous manner toward another whereby any person is placed in fear of safety of his life, limb or health. (7) To act in a violent or tumultuous manner toward another whereby the property of any person is placed in danger of being destroyed or damaged.

. The pertinent provision provides: A. Disturbing the peace is the doing of any of the following in such a manner as would foreseeably disturb or alarm the public: * * * (2) Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; or call him by any offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty.