1,WALTZER, Judge.

STATEMENT OF THE CASE

On 9 December 1994, the State filed a bill of information charging the defendant Fred Smith with one count of violating La. R.S. 40:967 relative to simple possession of cocaine. A codefendant, Carol Brown, was charged in a separate count with the same offense. On 20 December 1994, the defendant entered a not guilty plea while the codefendant entered a guilty plea and received a suspended sentence. A preliminary hearing and motion to suppress hearing were held on 24 February 1995 at which time the trial court found probable cause to bind the defendant over for trial and denied the motion to suppress evidence. On 30 May 1995, a six-person jury found the defendant guilty as charged. On 14 July 1995, the State filed a multiple bill of information charging the defendant as a fourth offender to which the defendant pled not guilty. On 7 September 1995, the defendant refused to be fingerprinted in connection with the multiple bill and was found to be in contempt of court. The trial court sentenced him to six months in parish prison to be served consecutively. The defense then moved for and the court appointed a lunacy commission. After hearing testimony by the doctors appointed to the commission, the trial court found the defendant incompetent on 28 | {¡September 1995. On 25 June 1996, another lunacy hearing was held, and the defendant was found competent to proceed. A multiple bill hearing commenced on 12 July 1996 and concluded on 28 October 1996. At that time, the trial court found the defendant to be a third offender and sentenced him to serve six years at hard labor. The State objected and gave notice of intent to seek writs, but never did so.
*716 On 20 March 1997, in response to an order of this Court in connection with a pro se writ, the trial court granted the defendant an out of time appeal and set a return date of 19 May 1997.

STATEMENT OF THE FACTS

Joseph K. Wong testified that he operated Maxwell’s Cafe, a lounge in the French Quarter. At approximately 3:30 a.m. on 20 October 1994, he was at the lounge checking on its operations, including checking the bathrooms. Mr. Wong was told that there were two people in the ladies’ bathroom, so he pushed the door open and saw a man, the defendant, and a woman holding something that “they were firing up”. To Mr. Wong, it appeared that they were smoking crack cocaine. Mr. Wong told the people they would have to leave. The defendant replied that this was America and a free place and that he did not have to leave. Mr. Wong then told the defendant that he would have to call the police if they did not leave. As the bartender called for the police, Mr. Wong went outside and flagged down an officer who was passing on a motor scooter. He told the officer that he was having problems with some people who were smoking crack in the bathroom and that he wanted them to leave. Mr. Wong further testified that the officer asked the defendant and his companion to leave, and when they would not, he arrested them | ¡¡and took them outside. Mr. Wong identified defendant as the male arrestee.
On cross-examination, Mr. Wong stated that he customarily checked the bathrooms in the lounge when someone stayed inside for a long time because they had a problem in the French Quarter with people going into the bathrooms to smoke crack cocaine. The defendant and his female companion were alone in the bathroom, and Mr. Wong could not tell which of the two was lighting something nor could he see a pipe. At the time the police officer arrived, the defendant and his companion were no longer in the bathroom but were inside the bar. Mr. Wong could not recall if defendant had ordered a drink.
On redirect examination, Mr. Wong explained that he regularly checked the restroom facilities at the lounge because the police had been raiding it frequently alleging that people were taking drugs there. Mr. Wong also stated that he shut down his other businesses to focus on and monitor Maxwell’s because of the constant police raids.
Police Officer Chris Abbott testified that, on 20 October 1994, he was assigned to the Eighth District, including the French Quarter. Officer Abbott was on routine patrol in the 400 block of Burgundy Street when he was flagged down by Mr. Wong. Officer Abbott was asked for assistance in removing persons from the bar. The officer approached the defendant and his female companion, and asked them to leave. Ms. Brown did nothing, while the defendant stated this was a free country and he did not have to leave. Officer Abbott, who up to that point had no intention of arresting anyone, advised them that if they did not leave, they would be under arrest for trespassing. Both the defendant and Ms. Brown refused to leave so the officer placed them under arrest for criminal trespassing. Subsequent to the arrest, pursuant to standard policy, Officer Abbott searched the |4defendant and Ms. Brown. Brown had a crack pipe in her hand; the defendant had a piece of rock cocaine in his front, right pocket. Officer Abbott placed them both under arrest for narcotics violations. Officer Abbott identified the cocaine which he recovered from the defendant. He also identified the crack pipe recovered from Ms. Brown.
On cross-examination, defense counsel questioned Officer Abbott regarding the usual procedure when a person is issued a municipal citation, including whether a person is usually taken into custody and transported to jail. Officer Abbott explained that, depending on whether it was a municipal or state charge, the nature of the charge, and the person’s criminal back *717 ground, the person would be taken into custody.
John Palm, Jr., a criminalist with the New Orleans Police Department, testified after being qualified as an expert that the substance he tested, and which had already been identified by Officer Abbott, was cocaine.
The defense presented no witnesses.

ERRORS PATENT

A review of the record for errors patent reveals that there are none.

FIRST ASSIGNMENT OF ERROR: The trial court erred in denying defendant’s motion to suppress evidence where there was no probable cause for arrest.

In support of his argument, the defendant relies upon State v. Miller, 97-2142 (La.App. 4 Cir. 11/12/97), 703 So.2d 125, where this Court held:
The glass pipe containing the cocaine was found |fipursuant to a search incident to the defendant’s arrest, [citing cases] Therefore, in order for the seizure to be lawful, the prosecution needed to show that the defendant’s arrest was legal. The prosecution argues the officer was justified in arresting the defendant because he was trespassing on Amtrak property and because he used profanity in response to the officer’s order for him to leave....
With respect to its first argument, the prosecution contends that the officer had probable cause to arrest the defendant for criminal trespass, a violation of Section 54-153 of the Code of the City of New Orleans. [Footnote omitted.] The provisions of this ordinance are identical to the provisions of LSA-R.S. 14:63, regarding the crime of criminal trespass. The prosecution asserts that the defendant’s actions show that he knew his entry was not authorized. However, the evidence adduced by the prosecution does not show that the defendant knew or reasonably should have known his entry was unauthorized. The area the defendant entered in the Amtrak station admittedly was a public area.... The facility was not marked in such a way as to alert any member of the public as to who was excluded from its use. The officer did not testify that the use of the facility was limited in any way; the officer did not testify that the defendant was engaging in any suspicious activity or loitering in the building. All the defendant did was to enter the men’s room, where apparently other men were congregated....
[T]he question in the case at bar becomes whether the officer was authorized to request that the defendant leave. Although the officer testified he was employed by Amtrak and that the restroom was used by Amtrak passengers, he also admitted that the building contained the bus terminal and a restaurant. As such, it is not clear whether the officer was possessed of any authority to bar anyone from using the admittedly public facilities just because that person was not a patron of Amtrak. There was no evidence presented as to who owned the building, nor was any evidence presented that the officer was authorized by the other businesses in the building to eject people who did not patronize them. Without such evidence, the prosecution failed to show that the officer was an “authorized person” who could forbid the defendant to remain, at least in the absence of any unlawful conduct on the defendant’s part.
| fiThe evidence adduced at the hearing indicates the defendant did not commit any “suspicious” act prior to the officer’s approach and questioning. He merely entered the restroom, where other men were congregating....
Miller, p. 2-4, 703 So.2d at 126-27.
The defendant argues that this case is indistinguishable from Miller. He contends that there was no testimony that there was a notice at Maxwell’s which restricted the use of the restroom to customers only. There was no testimony that the defendant and his companion had entered *718 the bar without apparent authorization. Section 54-153 of the Code of the City of New Orleans, the municipal criminal trespass statute which is identical to La. R.S. 14:63, the state criminal trespass statute, provides in part:
(a) No person shall without authorization intentionally enter any structure, watercraft, or movable.
(b) No person shall intentionally enter immovable property owned by another:
(1) When he knows his entry is unauthorized, or
(2) Under circumstances where he reasonably should know his entry is unauthorized.
However, as was discussed in Miller and conceded by defendant, defendant’s conduct constituted a violation of La. R.S. 14:63.3, “Entry or remaining in places or on land after being forbidden.” The defendant again relies on Miller and suggests that there was no evidence to show that Mr. Wong was a person who possessed the authority to demand that the defendant leave Maxwell’s; the defendant also suggests that Mr. Wong’s instruction to him, while he was still in the ladies’ bathroom, was equivocal because Mr. Wong only stated “Y’all are going to have to get out” which could have reasonably been interpreted by the |7defendant to mean he had to leave the ladies’ room, not the entire establishment.
It is in this regard that this case is clearly distinguishable from Miller. Mr. Wong testified at length regarding his operation of Maxwell’s; he also testified at trial that he told the defendant “to get out and leave my place of business.” Although the defendant contends that Mr. Wong never testified that he actually owned Maxwell’s, Mr. Wong did testify that he shut down his other businesses to focus on and monitor Maxwell’s because of the constant police raids. Thus there was ample evidence to establish that Mr. Wong possessed the authority to ask the defendant to leave the premises, in contrast to Miller where the station restroom was available for use by bus, train, and restaurant customers, the defendant was instructed to leave by an Amtrak officer, and the State never negated the possibility that the defendant’s presence was authorized by the other tenants of the station.
Moreover, again in contrast to Miller, the defendant was in the ladies’ restroom and was observed by Mr. Wong in the apparent act of smoking crack cocaine. The defendant refused to leave Maxwell’s even after Mr. Wong informed him that, if he did not, Mr. Wong would summon the police. This was not a case where the defendant was immediately arrested when told to leave; he was asked repeatedly by Mr. Wong to leave and refused to do so even after being warned that the police would be summoned. Furthermore, Officer Abbott testified that it was not his intent to arrest the defendant when he first asked him to comply with Mr. Wong’s demand that he leave. It was only after the defendant again refused to leave the premises that he was arrested.
A review of the evidence adduced at the hearing, on defendant’s motion to suppress evidence likewise supports the trial court’s finding of probable cause to arrest the defendant. Officer Abbott testified that he “was flagged down by Joe |RWong, the owner of Maxwell’s Bar and Grill,” who told the officer that he thought two people in the bar were doing drugs inside the restroom, that he asked them to leave, and that they refused. Officer Abbott entered Maxwell’s, at which time Mr. Wong pointed out the defendant and Ms. Brown and repeated that they had been in the ladies’ bathroom apparently taking drugs. Officer Abbott asked them to leave. The defendant asserted that it was a free country and he would not leave, at which time the officer placed him under arrest.
The motion to suppress evidence hearing testimony in conjunction with the trial testimony establishes that the defendant, after having been asked to leave Maxwell’s by the owner, refused to do so, giving the *719 officer probable cause to arrest him for violating La. R.S. 14:63.3, a type of criminal trespass. The search incidental to arrest was permissible, and the trial court correctly found that the evidence was lawfully seized.
This assignment of error lacks merit.

SECOND ASSIGNMENT OF ERROR: The trial court erred in denying a mistrial when the prosecutor implied that defendant must testify in his defense.

The remarks in question came during voir dire when the prosecutor stated:
Now, beyond a reasonable doubt, the fact that there’s, you have two stories where one is presented by the State and one, obviously, is presented by the Defense, the fact that there are two different stories, that’s not reasonable doubt.
Defense counsel objected “to the use of two different stories, because the Defense has no obligation to present a story whatsoever. We have no obligation to present a case at all.” The trial court did not specifically rule on this objection, |amerely stating, “Very well.” The prosecutor then stated that he was not referring to this particular case, but just to cases in general, at which time the court overruled the objection.
The defendant now argues that the prosecutor’s reference to “two different stories” implied to the jury that the defendant would testify so that his “story” could be presented to the jury, and when the defendant did not testify, called that fact to the jury’s attention. As this Court noted in State v. Ward, 96-1588, p. 4 (La.App. 4 Cir. 3/4/98), 712 So.2d 139, 142-43, writ denied 98-1072 (La.10/9/98), 726 So.2d 17:
When there is an indirect reference to the defendant’s failure to take the stand and testify, the court determines the remark’s intended effect on the jury. [Citing cases.] For such an indirect reference to mandate a mistrial, the State must have intended to draw the jury’s attention to the defendant’s failure to testify. State v. Clay, 612 So.2d 266 (La.App. 4th Cir.1992). If the prosecutor’s intention was to emphasize that the State’s case was unrebutted and that there were witnesses other than the defendant who could have testified on behalf of the defense but did not, the comment does not constitute an indirect reference to the defendant’s failure to testify. State v. Johnson, 541 So.2d 818 (La.1989). But if the defendant was the only witness who could. have rebutted the State’s case, a reference to the fact that the case was uncontroverted focuses the jury’s attention on the defendant’s failure to testify. Id. at 822.
Here, the prosecutor made no reference to the defendant’s failure to testify. Instead, during voir dire, the prosecutor outlined the concept that reasonable doubt does not arise solely because conflicting versions of events may be presented by the State and the defense. The prosecutor did not suggest that the State’s case would be unrebutted, which could be an indirect reference to the defendant’s failure to testify. Furthermore, the facts of this case do not demonstrate that the only person who could present the defendant’s “story” was the defendant. There |10was a reference during Mr. Wong’s testimony to the bartender whom he asked to call the police. This bartender was apparently a witness to what transpired, including whether the defendant and his companion had purchased drinks, had been in Maxwell’s for some time, and so forth. Ms. Brown was also a potential witness who could have testified regarding the events of that evening, including what Mr. Wong might have told the defendant about leaving.
Clearly, the defendant was not the only possible witness besides Officer Abbott and Mr. Wong, the two witnesses presented by the State. Thus, it does not appear that the prosecutor’s comment, which in any event was made during voir dire and not after the defense had failed to call any witnesses, constituted an impermissible *720 reference to the defendant’s failure to testify.
This assignment of error lacks merit. CONCLUSION
Having found no reversible error in the trial proceedings, we affirm the defendant’s convictions and sentences.
CONVICTIONS AND SENTENCES AFFIRMED.