806 So.2d 137 (2001)
STATE of Louisiana
v.
Steve Michael BARR.
Nos. 01-0696 to 01-0699.
Court of Appeal of Louisiana, Third Circuit.
December 28, 2001.
*139 James C. Downs, District Attorney9th JDC, Roger J. Breedlove, ADA9th JDC, Alexandria, LA, Counsel for Plaintiff/Appellee, State of Louisiana.
Ronald Paul Collins, Pineville, LA, Counsel for Defendant/Appellant, Steve Michael Barr.
Steve Michael Barr, Pro Se, Alexandria, LA, In Proper Person.
Court composed of ULYSSES GENE THIBODEAUX, BILLIE COLOMBARO WOODARD, and GLENN B. GREMILLION, Judges.
GREMILLION, Judge.
In this case, the defendant, Steve Michael Barr, seeks review of his convictions for two counts of simple battery, stalking, and disturbing the peace by offensive language. For the following reasons, we affirm Defendant's convictions for simple battery, affirm his convictions for disturbing the peace, but remand for resentencing, and reverse his conviction for stalking and remand for proceedings consistent with this opinion.

FACTS AND PROCEDURAL HISTORY
The simple battery charges stem from an incident on November 2, 1997, when Defendant ran up to Jason Desselle, grabbed him around his neck, and scrapped the side of his neck with his fingernail. A fight ensued which lasted less than a minute. Desselle maintained that he did not provoke Defendant in any way.
The stalking charge consisted of conduct which occurred over a two year period involving his neighbor, Lace Evans. Evans had been living in her apartment for *140 approximately one week in June 1998, when Defendant introduced himself to her as "the crazy neighbor next door." Over the next two years, he videotaped her from the bushes as she entered or exited her apartment. He threatened her with sexual contact and physical harm on numerous occasions and she feared that he would cause physical harm to her and her family.
The disturbing the peace charge stems from events that occurred on October 11, 1999. Evans was returning to her apartment and, as she pulled into her driveway, she saw Defendant standing in the road making obscene motions. When she got out of her car, he began yelling sexual obscenities at her.
Following bench trials, Defendant was found guilty on one count of simple battery,[1] stalking, and disturbing the peace, and was sentenced to five months in the parish jail, with four months suspended, and two years of supervised probation on each conviction, the sentences to run consecutive. He was also ordered to pay a fine of $500 and $138.50 in court costs or serve thirty days in the parish jail on each charge. The fines were ordered to run concurrent.
Defendant sought a writ of review, which this court denied. He then sought a writ of review, which the Louisiana Supreme Court granted, transferring the application to this court for consideration as an appeal. State v. Barr, 00-1787 (La.3/9/01), 781 So.2d 1249.

ERRORS PATENT
In accordance with La.Code Crim.P. art. 920, we review all appeals for errors patent on the face of the record. After reviewing the record, we find that there are two errors patent. First, as argued by Defendant in his first assignment of error, the trial court did not grant a trial by jury for the stalking charge. Pursuant to La.Code Crim.P. art. 779, a defendant charged with a misdemeanor, in which the punishment may be a fine in excess of one thousand dollars or imprisonment for more than six months, is entitled to a jury trial. Stalking carries a penalty of not more than one year imprisonment or a fine of not more than two thousand dollars, or both. La.R.S. 14:40.2(B). Thus, Defendant was entitled to be tried by a jury on this charge. Accordingly, Defendant's conviction for stalking is reversed and the case remanded to the trial court for further proceedings.
Second, Defendant received an illegal sentence on his conviction for disturbing the peace. Although we are not required to conduct an error patent review on a misdemeanor offense, such a review may be conducted at our option. State v. Carruth, 94-147 (La.App. 5 Cir. 9/27/94), 643 So.2d 1319; see also State v. Price, 583 So.2d 499 (La.App. 3 Cir.1990), writ denied, 589 So.2d 494 (La.1991). Defendant was sentenced to five months in the parish jail, four months suspended, and placed on two years of supervised probation. The maximum sentence for disturbing the peace is ninety days. La.R.S. 14:103. Therefore, Defendant received an excessive sentence. Accordingly, the sentence is vacated and the case is remanded to the trial court for resentencing.

JURY TRIALCUMULATION OF CHARGES
Defendant maintains that he was entitled to a jury trial because the cumulative effect of trying him on all the charges was prejudicial. Even though the trials were technically separate, he argues that the reality was that he was tried on all matters *141 and that he should have been given a right to trial by jury pursuant to the letter and/or spirit of La.Code Crim.P. arts. 493.1 and 495.1. This is one of the issues the Supreme Court ordered us to consider in granting Defendant's writ of review. Barr, 781 So.2d 1249.
La.Code Crim.P art. 493 provides that two or more misdemeanor offenses may be charged in the same information in a separate count for each offense. La.Code Crim.P. art 493.1 states, "Whenever two or more misdemeanors are joined in accordance with Article 493 in the same indictment or information, the maximum aggregate penalty that may be imposed for the misdemeanors shall not exceed imprisonment for more than six months or a fine of more than one thousand dollars, or both." Finally, La.Code Crim.P. art. 495.1 allows the trial court to sever the offenses if it appears the defendant or the state is prejudiced by the joinder.
We consider the jury trial issue in the light of State v. Hornung, 620 So.2d 816 (La.1993). In Hornung, the defendant was charged with three misdemeanor offenses in two separate bills of information. Upon the state's motion, the offenses were consolidated for trial. On appeal, our colleagues on the fifth circuit found as error patent the fact that the defendant was entitled to a jury trial, but the record did not contain a waiver of same. State v. Hornung, 613 So.2d 638 (La.App. 5 Cir. 1993). In so finding, the court reasoned that Article 493.1 did not apply because at least two of the consolidated offenses had not been joined in the same bill of information in accordance with Article 493. The court concluded that the total potential punishment for the consolidated charges exceeded six months imprisonment and, thus, the defendant was entitled to a jury trial. Id. In affirming the fifth circuit, the supreme court added:
We further note that this reasoning applies regardless of which party instigates consolidation. The decision of whether to charge an accused in one bill of information with multiple offenses, or in separate bills of information for each offense, is within the discretion of the district attorney alone. It is only when the district attorney exercises that discretion and joins the offenses in the same bill of information that the defendant is entitled to the reduced sentencing exposure of Article 493.1. See [State v. Odell, 458 So.2d 1304, 1306 (La. 1984) ]. Likewise, it is only when the district attorney joins the offenses in accordance with Article 493 in the same indictment or information that the state may avoid a jury trial. See State v. Johnson, 458 So.2d 1301 (La.1984). Accordingly, even if the defendant had moved to consolidate the offenses under La.C.Cr.P. art. 706, she could not be deprived of her right to trial by jury. See State v. Williams, 404 So.2d 954 (La.1981); State v. Bouche, 485 So.2d 950 (La.App. 5th Cir.1986).
Hornung, 620 So.2d at 817.
In the instant case, the State argues that the charges were not consolidated and that each docket number was tried independently. There is no indication in the record that either party motioned the trial court to consolidate the charges as did the state in Hornung. The record before the court reveals that the bench trials on the four charges were separate, although they were held consecutively on the same day and are contained consecutively in the same transcript, appearing one after the other. Each trial began with a reading of the bill of information, the swearing in of the witness(es), followed by the evidence, and concluded with the trial court's verdict.
*142 In his brief to this court, Defendant acknowledges that the trials were "technically" separate, but contends that he should have been given the right to a jury trial pursuant to Articles 493.1 and 495.1. However, the offenses were charged in separate bills of information; thus, the provisions of Articles 493, 493.1 and 495.1, which pertain to joinder of offenses in one bill of information, do not apply. However, the record indicates that the charges were never consolidated and that separate trials were conducted for each offense. Thus, Defendant was not entitled to a jury trial on the misdemeanor charges of simple battery and disturbing the peace simply because the trial for those offenses were held one after the other, no more than if the trials had been held on separate days. This assignment of error is without merit.

SUFFICIENCY OF EVIDENCE
By this assignment of error, Defendant argues that there was insufficient evidence to prove each element of the crimes beyond a reasonable doubt. A defendant, who has been convicted of misdemeanor charges, has a remedy by writ. Accordingly, upon his application to this court for a writ of review, Defendant's convictions were reviewed for sufficiency of the evidence. State v. Barr, an unpublished opinion bearing docket number 00-293 (La. App. 3 Cir. 5/16/00). Although his misdemeanor convictions were previously reviewed, we shall review them again in the interest of justice. However, we shall not review his conviction for stalking as we have determined that it should be set aside. We are cognizant of State v. Hearold, 603 So.2d 731, 734 (La.1992) (emphasis added), where the supreme court wrote:
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt.
Accordingly, the error we have previously found regarding the stalking charge is not a trial error, but, rather, a pre-trial procedural error which renders the entire proceeding null and void. Therefore, for us to preform a Jackson review would be tantamount to rendering an advisory opinion and we choose not to do so.
With that in mind, we shall review only the simple battery and disturbing the peace charges and look for guidance in State v. Lambert, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27, where we held:
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La. 1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court *143 should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See King, 436 So.2d 559, citing State v. Richardson, 425 So.2d 1228 (La.1983).

Simple battery
Battery is defined as "the intentional use of force or violence upon the person of another." La.R.S. 14:33. Simple battery is defined as "a battery committed without the consent of the victim." La.R.S. 14:35.
Desselle testified that, on November 2, 1997, Defendant drove by his house following close behind a friend of his. Desselle's friend stopped a few houses down to turn around, backed into a driveway, and was blocked in by Defendant. Desselle stated that he drove up to see what was happening and, when he got out of his car, he saw Defendant hit his friend. Desselle said Defendant then charged at him and grabbed him around the neck, scraping the side of his neck, after which a brief fight ensued. Desselle was absolutely positive that he did not say anything or do anything to provoke Defendant before he was attacked.
Defendant contends that inconsistencies exist between Desselle's trial testimony and his voluntary statement. He argues that Desselle's testimony is untrustworthy, claiming that it was unclear, internally contradictory, and did not exclude reasonable hypotheses of innocence such as self defense. Defendant claims that Desselle approached him; and he maintains that nothing in the record indicates that Desselle intended to defend his friend. However, Desselle's voluntary statement is only attached to Defendant's brief. The statement was not submitted into evidence at trial, was not considered by the trial court, and will not be considered by us on appeal.
Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to prove that Defendant committed simple battery upon the victim. The grabbing and subsequent scratching was an intentional use of force or violence against Desselle, and there is no evidence to dispute or discredit Desselle's testimony. Therefore, this assignment of error as it pertains to the conviction for simple battery is without merit.

Disturbing the peace
La.R.S. 14:103(A)(2) defines disturbing the peace in pertinent part as:
A. Disturbing the peace is the doing of any of the following in such manner as would foreseeably disturb or alarm the public:
. . . .
(2) Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; or call him by any offensive or derisive name, or make any noise or explanation in his presence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty; ...
At trial, Evans testified that she saw Defendant on October 11, 1999, while she was turning into her driveway. She said Defendant was standing in the road in front of her house grabbing himself and licking his fingers. She stated that, as she was getting out of her car, Defendant yelled that he would "f--k her real good." Evans was offended and immediately called the police. Rapides Parish Sheriff's Deputy Albert Hinojosa responded to the complaint. He testified at trial that he found Evans nervous, upset, and fidgety. Deputy Hinojosa said that Evans' trial testimony *144 was consistent with what she reported to him on the day of the incident.
Defendant contends that there was no proof beyond a reasonable doubt of where the crime occurred. He claims that Evans was in her front yard when he yelled at her, which he argues is not a public place, and, therefore, he was not disturbing the peace. He cites State v. McCoy, 546 So.2d 240 (La.App. 2 Cir.1989), for the proposition that a front yard is not a public place. However, in McCoy, the defendant was convicted of disturbing the peace under that portion of the statute that requires the victim to be in any street or public place. The case sub judice is distinguishable, in that it does not require the victim to be in a public place. The second phrase of the statute states, "or call him by any offensive or derisive name, or make any noise or explanation in his presence and hearing with the intent to deride, offend, or annoy him." That portion of the statute dose not require the victim to be in a public place. We note that the trial court specifically found Defendant guilty under this portion of the statute.
Additionally, Defendant argues that the alleged statement falls inside the category of constitutionally protected speech. He again refers to McCoy, wherein the defendant's use of the phrase "m______ f______" was considered constitutionally protected speech. In McCoy, the officers testified at trial that the defendant used "profanity and vulgarity." On appeal, our colleagues determined that the only phrases reported by the officers to the trial court were "m______ f______" and "damn." The appellate court opined that it could consider only those two phrases in determining whether the profanity was constitutionally protected or prohibited speech under La.R.S. 14:103(A)(2). The appellate court concluded that the deputies' general descriptions of "profanity" were not sufficient to support the defendant's conviction. Also, our colleagues went a step further and determined that La.R.S. 14:103(A)(2) was not applicable to the defendant's language because the words were not addressed to anyone. In McCoy, the two officers involved testified that the defendant's profane language was addressed to the situation as a whole. The appellate court added:
The first and fourteenth amendments to the U.S. Constitution require great care in the regulation of speech. Only "fighting wordsthose which by their very utterance inflict injury and tend to incite an immediate breach of the peace" are punishable. Words not considered "fighting words" are constitutionally protected expressions. City of New Orleans v. Lyons, 342 So.2d 196 (La.1977); White v. Morris, 345 So.2d 461 (La. 1977); State v. Woolverton, supra [474 So.2d 1003 (La.App. 5th Cir.1985) ]; Malone v. Fields, 335 So.2d 538 (La. App. 2d Cir.1976).
Id. at 243.
The facts in the instant case are distinguishable from those in McCoy. The phrase used by Defendant not only contained a profane word, but was combined with an obscene gesture which suggested he might take physical action. Moreover, the words spoken by Defendant were directed at Evans. Thus, the holding in McCoy is inapplicable to this case.
Evans testified that she was offended by Defendant's offensive comment. Defendant's intent to "deride, offend, or annoy" can be inferred from the sexual nature of his gestures and comments. Accordingly, the evidence is sufficient, in the light most favorable to the prosecution, to prove all of the essential elements of disturbing the peace; therefore, this assignment of error is without merit.

*145 RIGHT TO COUNSEL
Defendant contends he was denied his right to counsel by being forced to represent himself during his trials. In State v. Calhoun, 00-614, p. 5 (La.App. 3 Cir. 11/2/00), 776 So.2d 1188, 1192, quoting State v. Leggett, 363 So.2d 434, 436 (La. 1978), we noted:
Both the federal and state constitutions provide that the accused has the right to counsel of his own choosing to defend him on a criminal charge. However, this right does not permit arbitrary action which obstructs orderly procedures in the courts. Rather the right to choose one's attorney is a right to be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system. There is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications to the orderly trial of cases. Once the trial day has arrived, the question of withdrawal of counsel rests largely within the discretion of the trial judge. This court has frequently upheld the trial court's denial of motions for continuances or withdrawal of counsel made on the day of trial when defendant is dissatisfied with his present attorney but had ample opportunity to retain private counsel.
The question in this case is whether Defendant's actions constituted a valid waiver of his constitutional right to counsel. In State v. Batiste, 96-0526, pp. 7-8 (La.App. 3 Cir. 12/11/96), 687 So.2d 499, 503-04, writ denied, 97-0174 (La.6/30/97), 696 So.2d 1003, we wrote:
The magic words "dangers and disadvantages" are not the sine qua non of a knowing and intelligent waiver of the right to assistance of counsel at trial. See State v. Fritcher, 95-0124 (La.App. 1 Cir. 4/4/96); 672 So.2d 295. Although a defendant should be made aware of the dangers and disadvantages of self-representations, there is no particular formula which must be followed by the trial court in determining whether a defendant has waived his right to counsel. State v. Carpenter, 390 So.2d 1296 (La. 1980).... The determination of whether there has been an intelligent waiver of the right to counsel depends upon the facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. State v. Hayes, 95-1170 (La.App. 3 Cir. 3/6/96); 670 So.2d 683, citing State v. Harper, 381 So.2d 468 (La.1980).
See also State v. Mitchell, 580 So.2d 1006 (La.App. 3 Cir.1991), writ denied, 613 So.2d 969 (La.1993).
We were confronted with a similar situation in Batiste. The court referred to the defendant's "dilatory tactics," which involved eleven court appearances over a two-year period wherein the defendant informed the trial court he had retained counsel or would retain counsel on eight occasions. The defendant obtained three continuances of trial so he could retain counsel and the State invoked three hearings on "Motions to Determine Counsel" in attempts to have the defendant choose either to be represented by the Indigent Defender's Office or to retain his own counsel. We said:
In a situation such as this, the state is under pressure to move forward with trial. Not only does public pressure cause the state to move cases forward, but La.Code Crim.P. art. 578 places strict time limits upon the commencement of trial. Further, a defendant has a constitutional right to a speedy trial. Yet, the state cannot proceed to trial unless the defendant is represented by *146 counsel, or the defendant has knowingly and intelligently waived his right to counsel.
Batiste, 687 So.2d at 504. In Batiste, we compared the facts in that case to the facts in Mitchell and concluded that the defendant's dilatory tactics were much more flagrant in Batiste. We added:
The court in Mitchell found that he had waived his constitutional right to counsel due to his actions in the aggregate proceedings and held:
The defendant in this matter was not expressly warned of the dangers of self-representation. However, the defendant was repeatedly given the opportunity to obtain his own counsel or to accept the appointed counsel made available to him. On each occasion, he reversed his previous decision. Additionally, he failed to make any attempt to obtain the independent counsel he insisted upon. This conduct can only be interpreted as an attempt to avoid trial.
A defendant's failure to secure his own counsel and refusal to accept court appointed counsel may result in an implied waiver of his right to counsel. (citations omitted.)

Mitchell, 580 So.2d at 1009.
Id. at 505. Accordingly, we concluded that the defendant's conduct in failing to secure his own counsel or to accept court appointed counsel constituted an implied waiver of his right to counsel.
In the case sub judice, the court minutes reflect that Defendant was arraigned on a simple battery charge without counsel on February 13, 1998. On April 28, 1998, he was present in court with counsel, Charles Yeagar, and granted a continuance until July 28, 1998. That same day, Defendant was arraigned on one count of stalking.
On July 28, 1998, Defendant was present for trial without counsel on the simple battery and stalking charges and, upon his motion, the trials were continued until October 27, 1998. In the stalking charge, the minutes reflect that he was going to hire his own attorney. Mr. Yeagar filed a Motion to Withdraw and Substitute Counsel on August 7, 1998, and, on August 25, 1998, the trial court ordered the withdrawal of Yeagar and the enrollment of Glenn G. Cortello as counsel of record for Defendant. The next minute entry, dated September 14, 1998, indicates that Defendant was not present, but was represented by Cortello. According to the minute entry in the stalking charge the trial was continued upon a joint motion. Also, Defendant's motion for exculpatory evidence and a supplemental motion to quash were continued to October 27, 1998.
No further action occurred in the trial court on the simple battery and stalking charges until November 5, 1999.[2] Defendant was present without counsel. A continuance was granted to the State on those charges until November 30, 1999. On November 5, 1999, Defendant was arraigned without counsel on another stalking charge and on the disturbing the peace charge; bench trials were set for November 30, 1999. Defendant was present without counsel for the four trials which were held on November 30, 1999.

The Simple Battery Trial
During the first trial, on the simple battery charge, when given the opportunity to *147 cross examine the State's witness, Defendant stated that he was not allowed proper time to acquire defense counsel. He complained that, on November 5, 1999, he requested his case file from the prosecutor pertaining to his latest arrest on October 11, 1999, for the new charges of stalking and disturbing the peace, and was not allowed "proper defense consultation." The trial court reviewed the court minutes and noted that Defendant had two years to obtain counsel for trial on the simple battery charge. It noted the bill of information showed that Defendant was arrested two years earlier and the case was reset in November to the current court date. The trial court heard argument by Defendant that he thought the charges would be dismissed and that he tried to obtain another attorney on November 24, 1999. After considering those arguments, the trial court found that Defendant was arrested two years before, that the matter had been reset earlier in the month, and that he did object when the matter was called for trial. It disagreed with Defendant's complaint that he was not given the opportunity to object, stating that Defendant was given an opportunity when the State read the docket numbers and called the case for trial. Even though Defendant argued that he was not familiar with court procedures and claimed that was why he needed defense counsel, the trial court denied his request for an attorney and ordered the trial to proceed.
Defendant, by his dilatory actions, impliedly waived his right to the assistance of counsel at trial. The trial court did not commit error in requiring him to go to trial without counsel given the two year period he had to secure counsel, the fact that he was represented by three different attorneys during this two-year period, and the numerous court appearances he made during those two years. To allow Defendant a continuance in this instance would allow him to manipulate the judiciary process. Accordingly, this assignment of error is without merit as it pertains to the simple battery charge.

Disturbing the Peace
At the third trial on the charge of stalking, Defendant did not object to proceeding without counsel prior to the beginning of the trial. During trial, the trial court asked Defendant if he had any evidence he would like to present and Defendant responded that, once again, he was not allowed proper time to acquire counsel and that he wanted to place his objections into the record. The trial court instructed Defendant to answer the question and to cease making contemptuous comments about its prior ruling. The trial court reminded the Defendant that he had two years to get a lawyer.
The disturbing the peace charge was tried during the fourth trial. We note that Defendant did not object to proceeding with this trial even though he was aware that he could object to proceeding, since he had a shorter period of time in which to obtain an attorney. In the second and third trials, one of which he was found not guilty, he was reminded that he had two years to obtain a lawyer for those trials and did not. He instead became recalcitrant and continually made contemptuous comments about the trial court's prior rulings. In this trial, Defendant had no questions for the State's first witness and briefly cross-examined the State's second witness. When asked by the trial court if he had any witnesses or wished to make a statement, Defendant informed the court that this was the charge for which he had requested the State's file on November 5, 1999, and argued that he had inadequate time to prepare for trial.
*148 Again, Defendant attempted to manipulate the process. We choose to consider Defendant's actions in the aggregate proceedings on that day. In both Batiste and Mitchell, we held that the defendants' dilatory actions resulted in an implied waiver of their right to counsel. We went a step further in Batiste and considered the defendant's dilatory actions in prior proceedings and determined that he waived his right to counsel involving a charge for which he had been arraigned two months prior to trial on all of his charges. Accordingly, in the case at hand, we conclude that Defendant's dilatory actions in the aggregate proceedings prior to his trial for disturbing the peace with offensive language constituted an implied waiver of his right to counsel for that trial.

CONCLUSION
Defendant's convictions and sentences for simple battery and disturbing the peace are affirmed. His conviction and sentence for stalking is reversed and the case is remanded to the trial court for a jury trial, on that charge unless Defendant intelligently waives his right to be tried by a jury.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NOTES
[1] The State nolle prosequi another count of simple battery.
[2] At trial, Defendant maintained that a meeting was held in the early part of October 1998, wherein the State agreed to drop the charges. Defendant stated that he was represented by Mr. Cortello at the meeting. The State asserted, however, that it agreed to put the cases on "delayed docket," and that if nothing else ever happened, the charges would "die of old age." The State maintained that, as a result of Defendant's subsequent arrest in October 1999, the charges were brought back up.