833 So.2d 560 (2002)
STATE of Louisiana
v.
Eugene WILSON.
No. 02-700.
Court of Appeal of Louisiana, Third Circuit.
December 18, 2002.
*561 Trent S. Brignac, Assistant District Attorney, Ville Platte, LA, for State of Louisiana.
Edward K. Bauman, Louisiana Appellate Project, Lake Charles, LA, for Defendant Eugene Wilson.
Court composed of NED E. DOUCET, JR., Chief Judge, MICHAEL G. SULLIVAN, and GLENN B. GREMILLION, Judges.
SULLIVAN, Judge.
Defendant, Eugene Wilson, is once again before this court. Previously, Defendant challenged his convictions and sentences for theft and forgery. State v. Wilson, 01-625 (La.App. 3 Cir. 12/28/01); 806 So.2d 854, writ denied, 02-323 (La.9/13/02), 827 So.2d 1121. Because of a double jeopardy violation, this court vacated Defendant's conviction and sentence for theft. His conviction and his sentence for forgery, however, were affirmed. Meanwhile, on January 12, 2001, Defendant was charged as a fourth habitual offender. On May 2, 2002, a habitual offender hearing was held, at which time Defendant asked that his court-appointed attorney, John Larry Vidrine, be removed from the case because he had previously sent Defendant a collection *562 letter. The trial court removed Mr. Vidrine as counsel, but ordered him to assist Defendant at the hearing. The trial court denied Defendant's request for additional time to hire another attorney. After the hearing, the trial court adjudicated Defendant as a third habitual offender and sentenced him to twenty years at hard labor without benefit of probation, parole, or suspension of sentence. Subsequently, pursuant to a motion filed by Mr. Vidrine, the trial court granted Defendant an appeal. Defendant presently challenges his conviction and sentence as a habitual offender by raising the following assignments of error:
(1) the trial court erred in imposing the habitual offender sentence without the benefit of parole;
(2) the trial court erred in denying his motion to vacate and/or set aside the habitual offender proceedings; and
(3) the trial court erred in imposing a constitutionally excessive sentence.

Facts
The following facts surrounding Defendant's forgery conviction are taken from this court's previous opinion in Wilson, 806 So.2d at 856-57 (footnote omitted):
Defendant, Eugene Wilson, had a contract to transport "Welfare to Work" clients for the Evangeline Parish-area Acadiana One Stop Program. In May of 1999, Defendant forged the signature of a client who was no longer using the service, and turned in log-sheets bearing the forged signatures to Acadiana One Stop for reimbursement. Based upon the falsified signatures, the program overpaid Defendant between $100.00 and $500.00.

Errors Patent
In accordance with La.Code Crim.P. art. 920, this court reviews all appeals for errors patent on the face of the record. After reviewing the present record, we have found several errors patent concerning the habitual offender hearing and the sentence imposed. Because these errors patent are related to Defendant's assigned errors, we will discuss them together.

The Habitual Offender Hearing

Patent Error: Right to Counsel
The first patent error involves Defendant's right to counsel at the habitual offender hearing. Shortly after the proceeding began, Defendant announced that he wanted the trial court to remove Mr. Vidrine as his counsel based upon a collection letter dated December 28, 2000 that Mr. Vidrine sent to him on behalf of Federal Savings Bank. According to Defendant, the letter showed that Mr. Vidrine was biased against him and would be ineffective in representing him.
During the trial court's questioning of Mr. Vidrine, he admitted that he sent the letter, which was a standard form letter for people in arrears, but that he did not know the status of that particular file. Mr. Vidrine also stated that, if Defendant had not received a citation, he assumed that he had not filed suit on behalf of the bank, although he warned that if the bank requested him to take further action, he would be obligated to comply with the bank's wishes. Mr. Vidrine said that he sends out ten to fifteen similar letters each month, that he did not remember signing that letter, and that he was not biased or prejudiced against Defendant.
The trial court then gave Defendant an opportunity to question Mr. Vidrine, but Defendant declined. When questioned by the State, Mr. Vidrine noted that the amount in question from the letter, $85.98, was not an amount that the bank would have asked him to proceed with.
Thereafter, a colloquy took place in which the trial court reminded Defendant *563 that, when he previously objected to Mr. Vidrine in January of 2002, he had been given an additional ten days to hire the attorney of his choice, Harold Register, and to notify the trial court if Mr. Register would be representing him. When the trial court never heard from either Defendant or Mr. Register, it appointed Mr. Vidrine as Defendant's counsel of record. After this colloquy, the trial court removed Mr. Vidrine from the case, but ordered him to remain to assist Defendant during the habitual offender hearing. The trial court denied Defendant's request for additional time to hire another attorney.
In State v. Jones, 96-1581 (La.App. 3 Cir. 6/4/97); 696 So.2d 240, this court held that when a defendant raises a conflict of interest with his attorney before trial, the trial court is required to either (1) appoint separate counsel or (2) ascertain whether the risk of a conflict is too remote to warrant separate counsel.
From the colloquy at the habitual offender hearing, it appears that the trial court attempted to determine whether the risk of conflict warranted appointing separate counsel, but it did not announce a specific finding as to the conflict issue and it did not appoint new counsel. Instead, the trial court removed Mr. Vidrine from Defendant's case and ordered Defendant to proceed without counsel, but with Mr. Vidrine's assistance.
Although the trial court did not make a specific finding as to Defendant's claim of bias and prejudice, its denial of the claim was implicit, given that it ordered Mr. Vidrine to "assist" Defendant. Further, we find from the record that Defendant did not prove that Mr. Vidrine was biased or prejudiced against him. However, this court must now decide whether the trial court violated Defendant's right to counsel when it ordered him proceed unrepresented at the habitual offender hearing.
The United States Supreme Court has held that a defendant has a constitutional right to the assistance of counsel at a habitual offender proceeding. Chewning v. Cunningham, 368 U.S. 443, 82 S.Ct. 498, 7 L.Ed.2d 442 (1962). A defendant also has a right to be represented by counsel at sentencing. State v. Dupas, 94-1264 (La. App. 3 Cir. 3/6/96); 670 So.2d 667.
When the trial court removed Mr. Vidrine at Defendant's request, Defendant stated that he wanted some time for his family to "appoint [him] a lawyer." The trial court denied this request, and Defendant proceeded to the hearing without representation, but with the assistance of Mr. Vidrine. In State v. Barr, 01-696, pp. 9-10 (La.App. 3 Cir. 12/28/01); 806 So.2d 137, 145 (emphasis added), this court stated the following regarding a claim of the denial of the right to counsel:
Defendant contends he was denied his right to counsel by being forced to represent himself during his trials. In State v. Calhoun, 00-614, p. 5 (La.App. 3 Cir. 11/2/00), 776 So.2d 1188, 1192, quoting State v. Leggett, 363 So.2d 434, 436 (La.1978), we noted:
Both the federal and state constitutions provide that the accused has the right to counsel of his own choosing to defend him on a criminal charge. However, this right does not permit arbitrary action which obstructs orderly procedures in the courts. Rather the right to choose one's attorney is a right to be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system. There is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity *564 of a continuance and its disrupting implications to the orderly trial of cases. Once the trial day has arrived, the question of withdrawal of counsel rests largely within the discretion of the trial judge. This court has frequently upheld the trial court's denial of motions for continuances or withdrawal of counsel made on the day of trial when defendant is dissatisfied with his present attorney but had ample opportunity to retain private counsel.
The question in this case is whether Defendant's actions constituted a valid waiver of his constitutional right to counsel. In State v. Batiste, 96-0526, pp. 7-8 (La.App. 3 Cir. 12/11/96), 687 So.2d 499, 503-04, writ denied, 97-0174 (La.6/3/97), 696 So.2d 1003, we wrote:
The magic words "dangers and disadvantages" are not the sine qua non of a knowing and intelligent waiver of the right to assistance of counsel at trial. See State v. Fritcher, 95-0124 (La.App. 1 Cir. 4/4/96); 672 So.2d 295. Although a defendant should be made aware of the dangers and disadvantages of self-representations, there is no particular formula which must be followed by the trial court in determining whether a defendant has waived his right to counsel. State v. Carpenter, 390 So.2d 1296 (La. 1980).... The determination of whether there has been an intelligent waiver of the right to counsel depends upon the facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. State v. Hayes, 95-1170 (La.App. 3 Cir. 3/6/96); 670 So.2d 683, citing State v. Harper, 381 So.2d 468 (La.1980).
In Barr, 806 So.2d 137, we found that the defendant impliedly waived his right to counsel at trial by his dilatory actions, where he was given two years to secure counsel, during which time he made several court appearances at which he was represented by three different attorneys. In State v. Batiste, 96-526 (La.App. 3 Cir. 12/11/96); 687 So.2d 499, writ denied, 97-174 (La.6/30/97); 696 So.2d 1003, this court also found an implied waiver of counsel by dilatory actions, where the defendant had previously obtained three continuances and told the trial court on eight out of eleven appearances that he had retained or would retain counsel. Although we found an implied waiver of counsel, we, nonetheless, reviewed the sufficiency of the evidence to determine whether the defendant was unduly prejudiced by proceeding without counsel.
In State v. Mitchell, 580 So.2d 1006 (La. App. 3 Cir.1991), writ denied, 613 So.2d 969 (La.1993), the defendant appeared for trial without counsel, after he had previously been granted four continuances and had refused to accept court-appointed counsel. The defendant informed the trial court that he had planned to represent himself, but he could not because he was under "treatment." Although the trial court allowed the defendant to represent himself, it also appointed an attorney to assist him. Finding that the defendant waived his right to counsel, we stated:
[T]he defendant was repeatedly given the opportunity to obtain his own counsel or to accept the appointed counsel made available to him. On each occasion, he reversed his previous decision. Additionally, he failed to make any attempt to obtain the independent counsel he insisted upon. This conduct can only be interpreted as an attempt to avoid trial.
. . . .
Defendant's conduct in this matter constitutes [an implied] waiver. Moreover, *565 defendant did have counsel available to him throughout the trial and was lent assistance by counsel as needed. Accordingly, we find no denial of the defendant's constitutional right to counsel.
Id. at 1009.
In the present case, the record supports a finding that Defendant impliedly waived his right to counsel at the habitual offender hearing by his dilatory tactics. A January 4, 2002 minute entry indicates the trial court removed Ahmad Muhammad as Defendant's counsel because of Mr. Muhammad's failure to appear in court. The trial court appointed Mr. Vidrine to represent Defendant and allowed Defendant ten days to hire another attorney if he chose to do so. Otherwise, the trial court stated that Mr. Vidrine would remain as counsel. A subsequent minute entry dated January 11, 2002, indicates the trial court interrogated Defendant as to Mr. Muhammad's whereabouts, but Defendant did not know where Mr. Muhammad was located. The trial court allowed Defendant the use of a telephone to call an attorney. According to the minutes, Defendant advised the trial court that he called Mr. Register. The subsequent minute entries, however, show Defendant's attorney as Mr. Vidrine. We find that these minute entries corroborate the trial court's summation of Defendant's opportunities to hire his own counsel. In January of 2002, Defendant was given ten days to hire his own counsel, but he had failed to so by the time of the hearing in May of 2002.
Furthermore, the record reveals that Defendant did not suffer any prejudice from his self-representation. As was the case in Mitchell, Defendant proceeded with the assistance of an attorney. At the habitual offender hearing, the State presented its case with testimonial and documentary evidence, to which both Mr. Vidrine and Defendant objected. Although one of the documents the State introduced was Mr. Vidrine's response to the habitual offender bill of information, in which the truth of each allegation was acknowledged, the State did introduce other evidence. Before rendering its ruling, the trial court noted a problem with the proof for one of the prior convictions and found Defendant to be a third, rather than a fourth, habitual offender. After adjudicating Defendant a third habitual offender, the trial court sentenced him to twenty years at hard labor, without benefit of probation, parole, or suspension of sentence. Mr. Vidrine then moved for reconsideration of sentence, which the trial court denied. Mr. Vidrine also advised the trial court that "we will take an appeal as to the sentence," and did, in fact, file a motion for appeal. Thus, the record before us reveals that Defendant received a full evidentiary hearing during which he was actively assisted by counsel.

Patent Error: Advisement of Rights
Although the trial court advised Defendant of his right to remain silent, it did not advise him that he had the right to have the State prove its case against him at the habitual offender hearing. Nonetheless, we find the error harmless because a hearing was held.

Assignment of Error No. 2: Unreasonable Delay
In this assignment, Defendant argues that the delay between the filing of the habitual offender bill and his adjudication and sentencing as an habitual offender was unreasonable.
On January 12, 2001, Defendant was sentenced on his original convictions for theft and forgery. On that same day, the State filed a habitual offender bill, charging him as a fourth habitual offender. On *566 May 2, 2002, the date on which the habitual offender hearing was held, Defendant filed a pro se "Motion to Vacate and/or Set-Aside Multiple Offender Proceedings" because of undue delay. When the trial court gave Defendant the opportunity to argue the motion, Defendant stated, "It's in the Motion." After stating that it had perused the motion, the trial court denied it without further argument. Later in the hearing, however, the trial court mentioned that Defendant's original counsel, Mr. Muhammad, had failed to appear at six or seven scheduled hearings. The State then argued the delays in the habitual offender proceedings were the result of either Defendant or his counsel and sought to offer the entire record in support of this assertion. The trial court stated it had denied all motions that had been filed and that they were going to proceed with the habitual offender hearing.
In his appellate brief, Defendant contends that the record does not reveal whether the delay in conducting the habitual offender hearing was attributable to him or his trial attorney. He contends that the trial court erred in denying his motion to vacate because of the delay without conducting a hearing. The State responds that any delay was the result of Defendant's actions and that Defendant declined the opportunity to orally argue his motion to vacate before the trial court.
In State v. Alexander, 503 So.2d 782, 784 (La.App. 3 Cir.1987), we considered the following in finding that a twenty-four month delay between the filing of a multiple offender bill and the hearing was not unreasonable:
This case is governed by principles of due process and not by defendant's right to a speedy trial guaranteed by United States Const.Amend. VI and La. Const. Art. I, Sec. 16 (1974). Those cited constitutional provisions only apply to the right of an accused to have an expeditious determination of guilt. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); State v. Johnson, 363 So.2d 458 (La.1978). It is well settled that the habitual offender proceeding provided by LSA-R.S. 15:529.1 is in the nature of an enhancement of penalty, rather than a prosecution for a crime. State v. Stott, 395 So.2d 714 (La.1981).
Nevertheless, principles of fundamental fairness dictated by the due process clause of the Fourteenth Amendment prohibit inordinate delays in post-conviction proceedings such as imposition of sentence. State v. Duncan, 396 So.2d 297 (La.1981).
In State v. Bell, 471 So.2d 1190 (La. App. 3rd Cir.1985), writ denied, 477 So.2d 97 (La.1985), we stated:
"Under the statute [R.S. 15:529.1], the State is authorized to charge a defendant as a multiple offender `If at any time, either after the conviction or sentence, it shall appear that the person convicted of a felony' has previously been convicted of another felony. La.R.S. 15:529.1 D. It has been held that the language `at any time, either after the conviction or sentence' means what it says, but that the time for instituting multiple offender proceedings is not unlimited."
In the case sub judice the bill accusing defendant of prior convictions was timely filed; it was instituted the day after defendant was convicted of the underlying offense. See State v. Bell, supra, and State v. Wilson, 360 So.2d 166 (La.1978). The question is whether the hearing on the multiple offender bill, heard 24 months following the filing of the bill, constitutes undue delay sufficient to quash the charge.

*567 Although State ex rel. Glynn v. Blackburn, 485 So.2d 926 (La.1986) and State ex rel. Williams v. Henderson, 289 So.2d 74 (La.1974), specifically address instances where multiple offender bills were not filed until after an accused served the underlying sentence, they nonetheless stand for the proposition that proceedings against a convicted defendant to enhance his sentence under R.S. 15:529.1 must be completed before he has satisfied his sentence on the underlying felony and discharged from custody for that offense. In the case sub judice the record clearly establishes that defendant was still incarcerated for the underlying felony (simple kidnapping) at the multiple offender hearing. Therefore, we conclude that there was no unreasonable delay in conducting the multiple offender hearing since defendant was notified of the filing of the multiple offender bill immediately upon his conviction for the underlying offense and was still incarcerated when the multiple offender hearing was conducted.
Furthermore, as noted by the trial court, defendant's unavailability due to his incarceration together with his writ applications were reasons, in part, for the delay in conducting the multiple offender hearing.
In the present case, the habitual offender bill was filed on the same day that Defendant was sentenced to eight years at hard labor on his underlying conviction of forgery. Thus, the bill was filed timely, and the sentencing some fifteen months later occurred before the eight-year term was completed. Defendant was notified of the habitual offender charge immediately after he was sentenced on the underlying felony and was adjudicated and sentenced as an habitual offender before he completed the sentence for forgery.
Furthermore, the record supports a finding that the delay between the filing of the habitual offender bill and the habitual offender adjudication was caused by the defense. The habitual offender bill of information was filed on January 12, 2001. A minute entry dated February 1, 2001 indicates a hearing was scheduled for Defendant to answer as to his habitual offender status. The minutes indicate that Defendant was not present, but that his attorney denied all allegations on Defendant's behalf. Upon request of the State, however, a hearing on the "Response to the Habitual Offender Bill" was set for March 9, 2001. On March 8, 2001, Defendant filed a "Motion for Recusal," requesting that both the district attorney's office and the trial judge be removed from the case.
According to the minutes of May 11, 2001, a hearing was held on a motion to recuse assistant district attorney Anthony L. Walker and on the State's motion to quash a subpoena duces tecum. The trial court sustained the State's motion to quash, but found that Defendant failed to present evidence justifying a recusal. Another minute entry dated August 28, 2001 indicates Defendant was present, but his attorney, Mr. Muhammad, was not. The State then moved for the habitual offender hearing and the motion to recuse the district attorney to be reset for October 4, 2001, which the trial court granted. The State also moved for defense counsel to provide proof of his hospital stay. The minutes for October 4, 2001 indicate that Defendant was again present but his attorney, Mr. Muhammad, was not. The minutes indicate that the State moved to set a rule for contempt because of Mr. Muhammad's failure to appear and that the trial court set the rule for October 15, 2001. The State also notified the court that it had just received a notice of removal of the case that Mr. Muhammad filed in the *568 United States District Court, Western District, on October 8, 2001. The record does not indicate whether the Western District accepted the removal.
Another minute entry dated October 29, 2001 indicates that Defendant was present for a recusal hearing, but his attorney was not. The recusal hearing and rule for contempt were reset for November 14, 2001. The minutes of November 14, 2001 indicate that Defendant was present, but his attorney was not. The trial court noted that a "Motion to Recuse Judge Preston Aucoin" was denied by the judges to whom it was submitted. The trial court set the rule for contempt to be heard the following day, November 15, 2001. The minutes for November 15, 2001 again indicate that Defendant was present without his counsel. The trial court reset the matter for November 16, 2001. Once again, the minutes for November 16, 2001 indicate that Defendant was present, but his attorney was not. The trial court ordered hearings set for November 27, 2001. As before, the minutes for November 27, 2001 indicate that Defendant was present, but his attorney was not. The minutes of that date also indicate that the State moved to set the motion to recuse the district attorney for December 18, 2001.
On December 14, 2001, a hearing was held on a "Motion to Dismiss Contempt Rule," a "Motion to Quash Subpoena," and a "Rule for Sanctions." The minutes indicate that Jo Ann Fleming Brown, attorney for Mr. Muhammad, was also present on behalf of herself. The minute entry does not make any notation as to whether Defendant or Mr. Muhammad were present. The minutes for December 18, 2001 indicate that Defendant was present for the rules for contempt and the recusal of the district attorney and that Ms. Brown was present on behalf of Mr. Muhammad and herself, but only for the rules for contempt filed against each of them. The trial court ordered the contempt rules and the recusal motion set for January 4, 2002.
The minutes for January 4, 2002 indicate that Defendant was present without an attorney. The trial court found Mr. Muhammad guilty of several counts of contempt. The trial court also refused to grant Mr. Muhammad's motion to withdraw, but removed him from the case because of his failure to appear and to cooperate. The trial court appointed Mr. Vidrine to represent Defendant and dismissed without prejudice the motion to recuse the district attorney.
The next minute entry dated January 11, 2002, indicates Defendant was present on a rule for contempt because of Mr. Muhammad's failure to appear on January 4, 2002. The trial court interrogated Defendant as to Mr. Muhammad's whereabouts, but the Defendant stated he did not know where Mr. Muhammad was located. The trial court once again found Mr. Muhammad in contempt. The minute entry also indicates the trial court allowed Defendant to use the telephone to call an attorney that Defendant identified as Harold Register. At the previous January 4, 2002 proceeding, the trial court had told Defendant he had ten days to notify the court of his desire to hire new counsel. A minute entry dated January 31, 2002 indicates the State moved to file the original response to discovery motions. The trial court so ordered and allowed defense counsel ten days to object in writing. The record indicates a status conference was held on April 16, 2002, at which time the State moved to set the habitual offender hearing and to give Defendant fifteen days to answer. The habitual offender hearing was set for May 2, 2002, and took place as scheduled.
Considering the above, we cannot find that any delay was unreasonable. The *569 case cited by Defendant, State v. Broussard, 416 So.2d 109 (La.1982), is distinguishable. In Broussard, the State filed a habitual offender bill of information thirteen months after the defendant's conviction and sentencing. The supreme court found the delay in instituting the habitual offender prosecution unreasonable since the necessary information regarding the prior felonies was available at the time of the original sentencing, the defendant had already served thirteen months of his sentence and was anticipating parole in a few months, and the State offered no justification for the delay.

Sentencing

Patent Error: Illegal Sentence
Another error patent involves the sentence imposed. The trial court sentenced Defendant to twenty years at hard labor as a third habitual offender when the proper sentence should have been a mandatory life sentence under La.R.S. 15:529.1(A)(1)(b)(ii), as it read when the instant offense was committed in May of 1999. At that time, the penalty provision for a third habitual offender, found at La. R.S. 15:529.1(A)(1)(b) (emphasis added), provided:
(b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
(i) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction; or
(ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
At the habitual offender sentencing hearing on May 2, 2002, the trial court specifically stated that it was sentencing Defendant under subsection (b)(i) above. Because one of Defendant's prior felonies, distribution of cocaine, is a violation of the Uniform Controlled Dangerous Substance law punishable from five to thirty years at hard labor, however, Defendant should have been sentenced under subsection (b)(ii), which provided for a mandatory sentence of life imprisonment.
However, by Acts 2001, No. 403, § 2, effective June 15, 2001, the legislature amended the penalty provision that mandated life imprisonment for third habitual offenders to read as follows:
(b)(ii) If the third felony and the two prior felonies are felonies defined as a crime violence under R.S. 14:2(13), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of the commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more or any other crimes punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
La.R.S. 15:529.1(A)(1) (emphasis added).
Under the amended penalty provision, Defendant could not be sentenced to life imprisonment because his present felony *570 (forgery) does not fall within one of the categories warranting a life sentence under amended subsection (b)(ii).
The question, then, is whether the amended penalty provision should apply to Defendant, whose offense was committed before its effective date. Both the fifth and fourth circuits have found that Act 403 should not apply to those defendants who committed crimes before the Act's effective date. See State v. Ventress, 01-1165 (La.App. 5 Cir. 4/30/02); 817 So.2d 377, and State v. Houston, 02-255 (La.App. 4 Cir. 4/24/02); 818 So.2d 253. Further, Section 6 of Act 403 specifically states that the Act "shall only have prospective effect." Although this provision could be interpreted to apply the Act to all sentences imposed after its effective date of June 15, 2001, the supreme court did not endorse this interpretation in State v. Sugasti, 01-3407 (La.6/21/02); 820 So.2d 518.
In Sugasti, the trial court imposed a suspended sentence for possession of heroin, a violation of La.R.S. 40:966(C). The State appealed the sentence, arguing that, at the time of the commission of the offense, that statute did not allow for a suspended sentence. (Act 403, which also amended La.R.S. 40:966(C) to permit a suspended sentence, had become effective just six days before the defendant was sentenced.) Citing well-settled case law, the supreme court stated that, "[a]lthough the trial judge should consider the ameliorative changes in the law in imposing sentence, the trial judge should not derogate from the penalty provision in effect at the time of the commission of the offense." Sugasti, 820 So.2d at 521. The court particularly noted that the legislature "specifically provided that the provisions of Act 403 `shall only have prospective effect.'" Id. (quoting Acts 2001, No. 403,§ 6). The supreme court reasoned that, if the legislature intended the more lenient sentencing provisions to take effect immediately, "language signifying that intent could have easily been incorporated into the act." Id.
In Sugasti, the supreme court also distinguished Act 403 from the provisions of Acts 2001, No. 1163, which amended the sentencing provisions of La.R.S. 14:98(E), relating to driving while intoxicated:
The new provisions in Act 1163 retained the sentencing ranges provided for third and fourth offense driving while intoxicated violations, but radically changed the way the offender may or must serve the sentence imposed by the court. The statute encompassing the penalty provisions specifically states "upon conviction" the defendant shall be punished to a specific term. Additionally, the act did not include language specifying "prospective only" application. Act 1163 simply went into effect on August 15, 2001.
Id. (citing State v. Mayeux, 01-3195 (La.6/21/02); 820 So.2d 526) (footnote omitted) (emphasis added).
The habitual offender sentencing provision falls somewhere between those at issue in Sugasti and Mayeux. As previously noted, Act 403 states that it shall have prospective effect only. The habitual offender statute itself, however, contains the "upon conviction" language relied upon by Mayeux. La.R.S. 15:529.1 (emphasis added) provides in part:
(A)(1) Any person who, after having been convicted within this state of a felony ..., thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows....
Since the statute contains the "upon conviction" language, it is unclear whether the amended penalty provision would apply to those persons who were convicted after June 15, 2001. However, this issue need not be resolved in the present case since *571 Defendant was convicted of forgery on October 17, 2000, well before the effective date of the amended provision.
Considering the above, we find that the amended penalty provision for a third habitual offender does not apply to the present case. Thus, the pre-amendment provision applies, and Defendant should have received a sentence of life imprisonment without benefit of probation, parole, or suspension of sentence.
In State v. Williams, 00-1725 (La.11/28/01); 800 So.2d 790, the supreme court held that an appellate court may recognize an illegally lenient sentence as a patent error under La.Code Crim.P. art. 882(A), which provides: "An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review." In Williams, 800 So.2d at 797, the supreme court recognized that "a defendant in a criminal case does not have a constitutional or statutory right to an illegal sentence." Hence, "[w]hen an illegal sentence is corrected, even though the corrected sentence is more onerous, there is no violation of the defendant's constitutional rights." Id. at 798. As was done in Williams, we will vacate Defendant's sentence and remand for resentencing in compliance with La. R.S. 15:529.1(A)(1)(b)(ii), as it read when the instant offense was committed. We note that upon remand, Defendant will be given the opportunity to argue that a sentence below the mandatory minimum sentence is appropriate under State v. Dorthey, 623 So.2d 1276 (La.1993), and State v. Johnson, 97-1906 (La.3/4/98); 709 So.2d 672.

Assignments of Error Nos. 1 and 3: Restriction of Parole Eligibility and Excessive Sentence
Because of our recognition of the trial court's failure to impose the mandatory minimum sentence of life imprisonment, we find that these assignments of error are rendered moot.

Decree
For the above reasons, Defendant's adjudication as a third habitual offender is affirmed; however, his sentence is vacated, and the case is remanded for resentencing in accordance with this opinion.
AFFIRMED IN PART; SENTENCE VACATED; AND REMANDED.