LANIER, Judge:
The defendant, Diane F. DeShazo,[1] was charged in a bill of information with disturbing the peace “in such a manner as would forseeably [sic] disturb and alarm the public, by playing loud music” in violation of La.R.S. 14:103. DeShazo filed a motion to quash the information asserting “the provisions of the statute for which defendant has been charged are unconstitutional as being overly broad and a violation of defendant’s first amendment rights.” DeShazo pled not guilty. A ruling on the motion to quash was referred to the merits. After a bench trial, DeShazo was found guilty as charged. She was sentenced to serve ninety days in jail and ordered to pay a fine of $100 and costs; however, execution of sentence was suspended on “no further complaints of this nature made against the defendant’s business establishment.” [2] DeShazo sought a writ of review *964 to this court. We granted the writ to consider, among other things, the serious constitutional issues raised in the writ application.
FACTS
DeShazo is the owner of Reuben’s Lounge in Bayou Vista, St. Mary Parish, Louisiana. She had been issued the proper licenses to operate the lounge. The area in which she operates her lounge is not zoned. The lounge is located adjacent to a residential area called the Arlington Trailer Park.
In an effort to attract customers to her lounge, DeShazo employed local musicians to play for her patrons. Some of the residents of the Arlington Trailer Park complained about the live music because it was disturbing their sleep. The St. Mary Sheriffs Office gave the defendant several warnings to lower the sound level of the music at her lounge. St. Mary Parish did not have an ordinance which prohibited music during certain hours or regulated the level of sound.
On April 21, 1986, the sheriff’s department received three complaints about the loud music at defendant’s lounge. At this time, the lounge had been opened about fifteen months. The first complaint was at approximately 10:30 p.m. from Joe Vala-chavic. Valachavic lived in Arlington Trailer Park on lot number 30. Thereafter, at approximately 11:48 p.m., Mrs. Barbara Le-Blanc also complained about the loud music at the lounge. Mrs. LeBlanc is a resident of Arlington Trailer Park on lot number 29. Deputy Robert Smith was dispatched in response to these complaints and, on both occasions, found the music was loud at the lounge. The defendant was advised on both occasions that a summons would be issued for disturbing the peace if another complaint was received for the loud music. A third complaint was received by the sheriff’s department at approximately 11:58 p.m. that evening. Deputy S.E. Armstrong, Jr. was dispatched to the lounge for this third complaint. Armstrong only took two to three minutes to respond and was aware of the two previous complaints. When he arrived, several patrons were standing in front of the lounge and the door was open. Armstrong found that the music was loud, even after the front door had been closed. Armstrong went into the lounge and asked for the defendant. She was not at the lounge at that time; her son was in charge. The defendant arrived in a few (3 to 5) minutes. At that time, Deputy Smith also arrived at the lounge. Deputy Armstrong then issued a citation for disturbing the peace to DeShazo,
SUFFICIENCY OF EVIDENCE
DeShazo asserts, “[tjhere is insufficient evidence to establish beyond a reasonable doubt of any specific intent on the part of defendant to violate any criminal law.” The state responds that “there is no evidence to conclude that the defendant-relator had the specific intent to annoy or disturb the complainants, but her actions clearly demonstrate that she was aware that the consequences of her actions were certain to follow.”
A plea of not guilty places upon the state the burden of proving beyond a reasonable doubt each element of the crime charged. La.R.S. 15:271; State v. Guirlando, 491 So.2d 38 (La.App. 1st Cir.1986). In State v. Mathews, 375 So.2d 1165 (La.1979), a majority of the Louisiana Supreme Court determined that the United States Supreme Court case of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), required that the standard of review when considering the sufficiency of the evidence to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard for the appellate review of facts in criminal cases has been made statutory. La.C.Cr.P. art. 821; State v. Captville, 448 So.2d 676 (La.1984); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). The standard of Article 821 is an objective standard for testing the overall evidence, direct and circumstantial, for reasonable doubt.
*965 According to the record and the briefs of the parties,[3] DeShazo was charged with violation of La.R.S. 14:103(A)(2), which provides as follows:
Disturbing the peace is the doing of any of the following in such manner as would foreseeably disturb or alarm the public:
[[Image here]]
(2)Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; or call him by any offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing bis lawful business, occupation, or duty; ...
The elements of the offense, as actually prosecuted, were as follows:
(1) making any noise (playing loud music);
(2) in the presence and hearing of Vala-chavic and LeBlanc;
(3) with the intent to annoy Yalachavic and LeBlanc; and
(4) in such manner as would foreseeably disturb or alarm the public.
As previously indicated, the state had the burden of proving each of these elements beyond a reasonable doubt.
Criminal intent is defined in La.R.S. 14:10 as follows:
Criminal intent may be specific or general:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
(2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal eonse-quences as reasonably certain to result from his act or failure to act.
[Emphasis added.]
The reporter’s comment from La.R.S. 14:10 provides as follows:
This section states the two types of criminal intent generally accepted as existing in the criminal law. Both involve an adversión, or turning of the mind, to consequences. Where there is an active desire, sometimes called an ‘actual’ intent, there is no difficulty. However, an offender also may be responsible because the jury believes he ‘must have’ turned his mind to the consequences in acting as he did. See Restatement of the Law of Torts (1934) § 13, Comment (d). This situation, while generally sufficient to create criminal responsibility, does not always do so, as indicated by the following article.
[Emphasis added.]
La.R.S. 14:11, entitled “Criminal Intent; how expressed”, provides as follows:
The definitions of some crimes require a specific criminal intent, while in others no intent is required. Some crimes consist merely of criminal negligence that produces criminal consequences. However, in the absence of qualifying provisions, the terms ‘intent’ and ‘intentional’ have reference to ‘general criminal intent.’
The reporter’s comment for La.R.S. 14:11 provides as follows:
This section amplifies the three preceding sections, and makes it perfectly clear that the required mental element varies with varying crimes. In some crimes, particularly criminal attempts, ‘specific intent’ is required. In still others, such as negligent homicide, only ‘criminal negligence’ is necessary.
The definitions of the great bulk of the crimes in the Code, however, state that there must be an ‘intentional’ production of certain prescribed consequences (for example, ‘Aggravated arson is the intentional damaging * * * or setting fire to *966 any structure * * * ’)• However, in some crimes the production of certain consequences plus a specific intent to produce or accomplish some prescribed consequences is necessary (for example, ‘Forgery is the false making or altering, with intent to defraud, of any signature * * * )' Such an intent is a ‘specific intent. ’
The concluding sentence of this section indicates that when the term ‘intentional’ or ‘intent’ is used alone without modification, it refers to ‘general criminal intent’ as defined in the preceding section.
[Emphasis added.]
The jurisprudence has consistently held that, where the statutory definition of a crime includes the intent to produce or accomplish some prescribed consequences, proof of a specific intent is required, and the language “with the intent to” connotes such a specific intent. State v. Duncan, 390 So.2d 859 (La.1980) [La.R.S. 14:118]; State v. Williams, 389 So.2d 384 (La.1980) [La.R.S. 14:67.3]; State v. Johnson, 368 So.2d 719 (La.1979) [La.R.S. 14:64] and the cases cited therein.
La.R.S. 14:103(A)(2), as prosecuted herein, required the state to prove that DeSha-zo played the loud music in the presence and hearing of Valachavic and LeBlanc with the specific intent to annoy them in such a manner as would foreseeably disturb or alarm the public. However, in his oral reasons for the verdict, the trial judge observed as follows:
The thing that’s giving me the most trouble is whether it’s with the intent to annoy, and I have to agree that I don’t think there’s a deliberate specific intent of Miss Deshazo’s operations to specifically annoy Mr. Valachavic and Mrs. LeBlanc. Nevertheless, her continued actions in doing it, I think, would bring her within the ambit of the statute because of the many complaints — three in one night — concerning the operation of this bar.
[Emphasis added.]
As previously indicated, the state concedes in its brief that “[a]s stated by the trial judge, there is no evidence to conclude that the defendant-relator had the specific intent to annoy or disturb the complainants.”
DeShazo’s uncontradicted testimony shows that when she first received complaints about the music in her lounge she consulted her attorney. To try to solve the problem, DeShazo put a soundboard on the lounge wall, locked the lounge’s back door entrance (which was adjacent to the trailer park) and policed her parking lot to try to keep the front door closed as much as possible. DeShazo put insulation between the wooden and metal walls of the building. DeShazo put carpets on the walls to muffle the sound. DeShazo testified she tried “to make the band not play any louder than the freight train on the tracks, the garbage dump, eighteen-wheelers, dogs barking or babies crying.” On April 21, 1986, after Deputy Smith returned to the lounge the second time, DeShazo left the lounge to get some ice and left her son in charge. She instructed her son to keep the music lowered. When she returned about thirty minutes later, Deputy Armstrong was already present. This testimony (which apparently was accepted by the trial court) shows that the trial court’s factual finding on specific intent is correct.
The state asserts that DeShazo’s “actions clearly demonstrate that she was aware that the consequences of her actions were certain to follow.” We perceive this as an argument that the offense charged herein only requires a general criminal intent and that a general criminal intent was proven. This argument is in error as a matter of law. The offense charged requires proof of a specific criminal intent, and the evidence is insufficient to prove such.
DECREE
For the foregoing reasons, the conviction and sentence are reversed, and the defendant is ordered discharged.
REVERSED; DEFENDANT DISCHARGED.

. The defendant’s name appears as "Dianne F. Deshazo" on the bill of information; however, the signature on the summons issued to her by Deputy S.E. Armstrong, Jr. appears to be "Diane F. DeShazo".

. The transcript of the sentencing shows the trial court delayed the imposition of the sentence for six months "depending on what happens in the future”, and then stayed execution of the sentence pending action on the writ application. The minute entry for the sentencing shows the trial court suspended the execution of the jail term conditioned on no further complaints against the lounge, and then stayed execution of sentence pending the outcome of the writ.

. In the bill of information, the state did not allege which paragraph of La.R.S. 14:103 it was charging. The defendant did not file a bill of particulars to require the state to declare which paragraph it was proceeding under.