Dear Mayor Cox:
We respond to your questions concerning Town of Fordoche Alcohol Beverage Control Ordinance 04-03 in the order presented in your correspondence.
 Question I Would a barroom be "grandfathered" or prohibited from renewing its annual alcohol permit when the barroom falls within the prohibited distance of a church when the original permit was issued before the effective date of the revised ordinance that establishes a minimum distance?
The law exempts premises licensed to sell alcoholic beverages for over a year prior to the enactment or amendment of an ordinance imposing either the three hundred or five hundred feet prohibited distance between the premises and a church. R.S. 26:81 (E) pertains to the issuance of retail liquor permits and states:
 E. The prohibitions in this Section do not apply to
any premises which are maintained as a bona fide hotel, or fraternal organization, nor to any premises which have been licensed to deal in alcoholic beverages for a period of one year or longer prior to the adoption of the ordinance. (Emphasis added).
 Question II The town adopted a minimum distance of 500 feet. Are we within our authority to increase the distance of proximity of a church?
Our response to your second question is "no". Local governing bodies may not extend the prohibition of sales of alcoholic beverages beyond the distance of five hundred feet from churches, synagogues, libraries, and playgrounds. The power to regulate traffic in alcoholic beverages delegated to local political subdivisions by the state cannot exceed the grant of authority and must fall when they conflict with state law. SeeBarney's Family Market vs. Avoyelles Parish Police Jury, 452 So.2d 822
(La.App. 3rd Cir. 1984).
 Question III In regards to measuring the distance between a church and bar, shall or should we use the state's method of measuring the distance or, interpret the section as literally measuring building to building?
R.S. 26:81 (C) states:
 C. When prohibited by municipal or parish ordinance, no permit shall be granted for any premises situated within three hundred feet or less, as fixed by the ordinance, of a public playground or of a building used exclusively as a church or synagogue, public library, school, or full-time day care center as defined in R.S. 17:405 (A) (4). In municipalities and in unincorporated areas which are divided into subdivisions with streets, blocks, and sidewalks, this distance shall be measured as a person walks using the sidewalk from the nearest point of the property line of the church, synagogue, public library, public playground, school, or full-time day care center to the nearest point of the premises to be licensed. (Emphasis added).
The language of the statute requires the distance to be measured as a person walks using the sidewalk. See Morvant vs. St. CharlesParish, 658 So.2d 21 (La.App. 5th Cir. 1995).
 Question IV In order to clarify "public" in section B (1 
2), would a person with an open container with alcohol content be considered in violation of this section if he is located in a baseball park that is owned by the Fordoche Recreation Inc., which is a private organization?
Your ordinance, in pertinent part, provides:
B. It shall be unlawful:
 (1) For any person to drink any alcoholic beverages in or upon any public street, alley, sidewalk, right-of-way, park playground, square, or other public place in the town.
 (2) For any person to carry an opened drinking container containing any alcoholic beverage in, or upon any public street to carry an opened drinking container containing any alcoholic beverage in, or upon any public street, alley, sidewalk, right-of-way, park, playground, square, or other public place in the town.
Our response to your fourth question is "yes". Generally, streets, sidewalks, and parks are considered to be public areas. See Attorney General Opinion 92-826 and United States vs. Grace, 461 U.S. 171103 S.Ct. 1702, 75 L.Ed.2d 736 (1983). We think the ball park is a "public place" for purposes of the open container ordinance because it is open to the general public patronizing the baseball game. We make this determination notwithstanding that the ball park is owned by Fordoche Recreation, Inc., which is a private organization. Further attached is Attorney General Opinion 99-83, which concluded that law enforcement officers are required to issue citations for violations of handicapped parking on private property which has parking for the general public doing business at that location.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY: ____________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams
OPINION NUMBER 92-826
January 22, 1993
5 ARRESTS 16 CRIMINAL LAW — Crimes Offenses 76 OBSCENITY
La.R.S. 14:103 (A) (2)
Individual standing in his yard yelling obscenities has not violated La.R.S. 14:103 (A) (2), disturbing the peace, unless the person addressed is in a public place
Mr. Malcolm Millet Chief Criminal Deputy Acadia Parish Sheriff's Office P.O. Box 289 Crowley, LA 70527-0289
Dear Mr. Millet:
Your request for an Attorney General opinion concerning La.R.S.14:103 (A) (2) has been forwarded to me for research and reply.
You asked the following question:
 Is an individual who stands in his yard using "offensive, derisive or annoying words" in violation of LSA-R.S. 14:103 (A) (2) as it relates to "other public places"?
La.R.S. 14:103 concerns disturbing the peace and states, in pertinent part:
 A. Disturbing the peace is the doing of any of the following in such manner as would disturb or alarm the public:
 * * * (2) Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; or call him by any offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty. . . .
La.R.S. 14:103 (A) (2) specifically limits itself to words addressed to one in a public place. State v. McCoy, 546 So.2d 240 (La.App. 2d Cir. 1989). In McCoy, the defendant was charged with disturbing the peace after he stood in his front yard and screamed obscenities at his wife, who was standing on a sidewalk in the front yard. The court stated that it had "no hesitation in holding that McCoy's front yard was not a public place, as specified in R.S. 14:103 (A) (2)." 546 So.2d at 242. The court cited United States v. Grace, 461 U.S. 171, 103 S.Ct. 1702,75 L.Ed.2d 736 (1983) to the effect that "[g]enerally, streets, sidewalks and parks are considered to be public places." However, because of a lack of evidence at the trial court level, the McCoy court could not determine whether Mrs. McCoy was standing in a public place. Because all the elements of La.R.S. 14:103 (A) (2) were not met, the court reversed the defendant's conviction.
Therefore, it is the opinion of this office that unless the person addressed is "lawfully in any street, or other public place," the speaker has not violated La.R.S. 14:103 (A) (2) since it requires that the person addressed be in a public place.
I hope the foregoing has adequately answered your questions. If our office can be of any further assistance, please do not hesitate to contact us.
Sincerely,
 BY: ____________________ Frederick A. Duhy, Jr. Assistant Attorney General Criminal Division
FAD/sff 92-826
OPINION NUMBER 99-83
April 6, 1999
70 — Motor Vehicles — Control Regulation R.S. 40:1742
R.S. 40:1400
R.S. 32:41
Law Enforcement officers are mandated to provide for and enforce a penalty for violations of handicapped parking on private property which has parking for the general public doing business at the location.
Hon. John C. "Juba" Diez Louisiana House of Representatives District 59 42126 Hwy. 931 Gonzales, LA 70737
Dear Representative Diez:
This office is in receipt of your request for an opinion of the Attorney General in regard to handicapped parking violations. You indicate you have been consulted by local law enforcement officers on this matter and they feel they do not have the authority to issue a citation to an individual who parks in a handicapped parking space on privately-owned property. Accordingly, you present the following questions:
 1. Does R.S. 40:1742 authorize law enforcement officers to enter onto privately-owned businesses in order to issue tickets to those individuals who unlawfully park in parking spaces designated for use by the handicapped; and
 2. Is there another provision of state law which would prohibit law enforcement officers from performing this task?
We find in Title 40, Public Health and Safety, Chapter 8, Building Regulations, Part V, Equal Access to Public Facilities for Physically Handicapped, is R.S. 40:1742, entitled, Parking Spaces for Certain Disabled Persons, providing in pertinent part as follows:
 A (1) Each state agency and political subdivision having jurisdiction over street parking or publicly owned and operated parking facilities shall provide a minimum number of specially designed and marked motor vehicle parking spaces for the exclusive use of persons whose vehicles are identified by license plates or parking cards for the mobility impaired which contain the word "handicapped" embossed on the license plate or parking card. The motor vehicle parking spaces shall adhere to the ADAAG specifications. The minimum number of such parking spaces shall be established by ADAAG.
(2) * * * * * * * * * * * * * * * * * * * * * * * * * *
(3) * * * * * * * * * * * * * * * * * * * * * * * * * *
 B (1) Each state agency and political subdivision having jurisdiction over state parking, publicly owned and operated parking facilities, public facilities, or public facilities for accommodation shall provide for and enforce a penalty of two hundred seventy-five dollars for persons who park in spaces for the mobility impaired who do not have a license plate for the mobility impaired which contains the word "handicapped" embossed on the license plate or a properly displayed parking card issued pursuant to R.S. 47:463.4 or 463.4.1.
 (2) In addition to such fine, the offender may also be required to pay the towing fee and any storage costs which are incurred.
 (3) (a) In addition to all fines, fees, costs, and punishment authorized by this Subsection, any parish which institutes a formal program of utilizing disabled volunteers to assist the law enforcement agency in enforcing the provisions of this Subsection may provide for and enforce an additional twenty-five dollar fine for each violation of such provisions.
 (b) All monies collected by the court from such additional fine shall be forwarded by the officer of the court who collects the same to the parish governing authority within thirty days after the fine is collected.
 (c) The proceeds of such additional fine shall be used by the parish governing authority exclusively to fund the formal program of utilizing volunteers to aid in enforcing the provisions of this Subsection.
 (4) Notwithstanding R.S. 40:1743, any owner or lessee of a public facility who fails to maintain spaces reserved and designated for the exclusive use of vehicles bearing a special license plate or parking card issued to a mobility impaired driver free of obstructions shall be fined not more than five hundred dollars.
Under this provision we find political subdivisions "shall" provide for and enforce a penalty for persons who park in spaces for the mobility impaired who do not have a license for such parking. We further note that this extends to political subdivisions having jurisdiction over "publicly owned and operated parking facilities" as well as "public facilities". Moreover, the statute further provides "any owner or lessee of a public facility who fails to maintain spaces reserved exclusively for such vehicles" shall be fined. We must conclude by including "public facility" in addition to "publicly owned and operated facilities", indicates enforcement would apply to parking by the public on private property opened for business to the general public. This conclusion is supported by R.S. 40:1732 wherein the definitions are set forth for Part V, Equal Access to Governmental and Public Facilities for Physically Handicapped, to include in paragraph (9), "(a) "Public facility" means a commercial facility or place of public accommodations as such terms are defined in the ADAAG", (Americans with Disabilities Act Accessibility Guidelines) and "(b) A "Public facility" does not include a governmental facility."
Moreover, while this office observed in Atty. Gen. Op. No. 96-148 that political subdivisions may regulate parking and various other traffic controls on highways within their corporate limits that are not state maintained, and any additions first approved in writing by the state department of highways, the opinion further states, "Municipalities may also, upon request of the owner or manager of a parking area, adopt rules regulating traffic and parking within that area for safety and convenience."
The latter statement is consistent with the observation in Atty. Gen. Op. No 84-808 which relied upon R.S. 32:41 (D) in holding as follows:
 In conclusion, it is the opinion of this office that based on the authority of the revised statutes, municipal law enforcement officers have the authority to enforce traffic ordinances in parking areas such as those in shopping centers when requested by the owner or manager of the shopping center.
R.S. 32:41 (D), Power of local municipal authorities, provides as follows:
 D. Upon the request of either the owner or the person in charge of the general operation and control of a parking area, local municipal authorities may adopt local ordinances to:
 (1) Order stop signs, yield signs, or other traffic control devices erected at specified entrance or exit locations to a parking area or at an intersection in the parking area.
 (2) Regulate traffic in the parking area, including regulation by means of traffic control signals.
 (3) Prohibit or regulate the turning of vehicles or specified types of vehicles at intersections or other designated locations in the parking area.
 (4) Regulate the crossing of a roadway in the parking area by pedestrians.
 (5) Designate a separate roadway, drive, or lane in the parking area for one-way traffic.
 (6) Prohibit, regulate, restrict, or limit the stopping, standing, or parking of vehicles in specified areas of the parking area.
 (7) Designate safety zones, loading zones, and other restricted areas in the parking area.
 (8) Provide for the removal and storage of vehicles parked or abandoned in the parking area during snowstorms, floods, fires, or other public emergencies, or found unattended in the parking area, if the vehicles constitute an obstruction to traffic or if stopping, standing, or parking is prohibited, and for the payment of reasonable charges for the removal and storage by the owner or the operator of the vehicle.
 (9) Adopt additional reasonable rules with respect to traffic and parking in a parking area as local conditions may require for the safety and convenience of the public or users of the parking area.
We note that the R.S. 40:1742 designates a portion of the fine for "any parish which institutes a formal program of utilizing disabled volunteers to assist the law enforcement agency in enforcing the provisions of thisSubsection". This brings our attention to R.S. 40:1400, Handicapped Parking Enforcement, which establishes within the office of state police a program to train and utilize volunteers in the enforcement of handicapped parking restrictions. The statute provides, after completion of training, that the volunteer may collect certain information substantiating a violation and submit such information to the respective state police troop headquarters in accordance with procedures established for the program by the office of state police. We have been informed that this is not yet operational inasmuch as R.S. 40:1400 (B) provides, "The Program will become operative if and when funds are transferred to theoffice of state police from the office of disability affairs for such purpose." Therefore, when the program becomes operative this provision will allow disabled volunteers to assist the parish law enforcement in enforcing handicapped parking.
However, it is our conclusion with respect to violations of handicapped parking that at this time law enforcement officers are not only authorized but are mandated without request of the owner under R.S. 40:1742 to provide for and enforce a penalty for violations of handicapped parking on "public facilities" which we find is commercial private property which has parking for the general public doing business at the location. R.S. 32:41
extends this authority to other traffic regulations on private property upon request of the owner and adoption of an ordinance. Of course, we recognize that often violations of handicapped parking on private property will not come to the attention of the law enforcement without a request of the property owner or a situation where there are volunteers assisting in the enforcement.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 BY: ____________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR